[No. 16931. Department Two. May 12, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Henry C. Ewing, Respondent,* v. C. L. MORRIS, *Appellant.*[1]

MORTGAGES (189)—RECEIVERS (88-1)—SUPERVISION—POWERS AND DUTIES. A receiver appointed in a mortgage foreclosure upon stipulation of the parties is nevertheless an officer, and subject to the control, of the court and may be ordered to report to the court, regardless of a satisfactory report to the parties to the suit.

SAME (189)—RECEIVERS (88-1). After a receiver in a mortgage foreclosure has been ordered to report to the court, it is no excuse for failure to do so that the action is dismissed with prejudice, by stipulation providing for his discharge without reporting to the court.

CONTEMPT (11, 31)—DEFENSES—PUNISHMENT—PURGING. A receiver is not purged of contempt, in failing to obey an order to report to the court, by a petition to vacate the order because of changed conditions under which the action has been dismissed with prejudice.

RECEIVERS (55)—SUPERVISION—AUTHORITY. The character and interest of the party moving to require a receiver to report has no bearing on the power of the court to make the order.

CONTEMPT (2)—IN PRESENCE OF COURT—NOTICE. Where a receiver was present at a hearing and represented by counsel, notice of an order requiring him to report to the court must be imputed to him, and he is guilty of contempt in disobeying the order although no copy thereof was served on him.

SAME (11)—DEFENSES—ERRONEOUS ORDER. A receiver cited for contempt in disobeying an order to report, cannot defend on the ground that the order was erroneous, when not absolutely void.

[1]Reported in 207 Pac. 18.

SAME (19)—PROCEEDINGS—SUMMARY CITATION. When a receiver has been guilty of wilful disobedience of an order to report, he may be proceeded against for direct contempt on the court's own motion without pleadings.

Hovey, J., dissents.

Appeal from an order of the superior court for Benton county, Truax, J., entered April 13, 1921, upon finding defendant guilty of contempt of court. Affirmed.

*Lee C. Delle,* for appellant.

*Robinson, Murphy & Murphine* and *Parker, La Berge & Parker,* for respondent.

HOLCOMB, J.—In March, 1916, a mortgage debt being in default by the Kiona-Benton Land & Water Company, hereinafter called the land company, to the North American Mortgage Company, foreclosure of the mortgage was instituted. At about the same time, there being another mortgage for a large amount from the same mortgagor, which had been assigned to the International Mortgage Bank, in April, 1916, foreclosure of that mortgage was commenced. Both were commenced in the superior court for Benton county. It had been agreed between the mortgage companies and the mortgagor that separate mortgage foreclosures should be had, and that C. L. Morris, of Seattle, a stockholder in the Kiona-Benton Land & Water Company, a domestic corporation, who had had no act or part in the management of the land company, should be appointed receiver under the foreclosure proceedings, of the mortgaged premises, and take control and active management of the same, and determine whether the mortgages could ultimately be paid from the earnings of the property, or whether it would be necessary to prosecute foreclosure proceedings to final judgment and sale. It was also agreed at that time between the mortgage companies, the land company and the re-

ceiver, that, by reason of the uncertain conditions of the outstanding sale contracts, and the general depreciated condition of the whole project, the records would not be incumbered with reports; but that the receiver should first make a preliminary report with his recommendations to each of the mortgage companies and the land company, and annually thereafter make and file with each of the mortgage companies and the land company a report of his acts and doings for that year. The receiver agreed upon by the parties to the action was accepted by the trial court and was appointed, thereafter duly qualified and entered upon his duties as such receiver. Pursuant to the agreement between the parties to the action and the receiver, the receiver made his preliminary reports and recommendations to each of the mortgage companies foreclosing, and the land company, and each year thereafter made and filed with each of the parties his annual report.

The land company continued to maintain its corporate existence, and there were no proceedings to liquidate it and end its corporate existence. The method above outlined of proceeding with the operation and management of the property and reporting to the parties continued until September 15, 1919, when there was a meeting of the stockholders and trustees of the land company at its office in Seattle, at which receiver Morris was called upon for a report, and at which resolutions were unanimously adopted authorizing him to lease, sell, mortgage or otherwise dispose of all or any part of the property of the land company, real, personal or mixed, on such terms, conditions, consideration and credits, and at such times as in his judgment and discretion he should deem to be to the best interests of the corporation, with a proviso that no sale of the corporation's property as a whole should be finally

consummated without the approval of the board of trustees. All his acts and doings in relation thereto were ratified and confirmed. Thereafter the receiver filed a petition in the superior court on October 15, 1919, for, and obtained an order granting him the same power as had been conferred by the parties to the action. He then proceeded, through the agency of the Henry C. Ewing Company, a corporation in Seattle, to make a large number of sales of the land under foreclosure.

On November 26, 1920, Henry C. Ewing, a stockholder of the land company, filed an application in both mortgage foreclosure suits demanding inspection of the books and records of the defendant corporation, and a report to the court of the receiver's doings as such receiver. The court duly issued a citation on these applications, and on December 14, 1920, the date on which the hearing was set, the mortgage companies, the receiver and the defendant land company appeared in court and contested the petition. The court did not at that time enter an order, but took the matter under advisement, and later, and on March 17, 1921, made and entered an order reciting the hearing on December 14, 1920, on the petition of Ewing, and on the answers of the receiver and the defendant land company, recited that Ewing did not appear in person, but appeared by his attorney, and that the receiver, Morris, appeared in person and was represented in court by his attorney. It was therein ordered that, on or before April 6, 1921, Morris, as receiver, should file a full and complete report of his receivership from the time of his appointment to the date of the filing of such report, which report should show all amounts still owing and other details, and, in fact, furnish a general report of such receivership since the year 1916. It was specified that

the receiver should report the amount paid as attorney's fees to date, and whether or not any charges by way of counsel fees remained unpaid at the date of the report, and that the receiver should set forth how much has been paid for his services rendered thus far, as well as the amount of his claim, if any, on account of services still remaining unpaid at the time of filing his report. The order contained other matters not here material.

After the entry of the foregoing order, and prior to April 6, 1921, Morris, as such receiver, made and filed a complete settlement with each of the mortgage companies. On April 6, 1921, a stipulation was filed in each cause to the effect that the mortgage companies had been paid their indebtedness in full, including attorney's fees and costs, and had executed full and complete releases and satisfactions of their mortgages, and the notes secured thereby; stipulated that they had no further claim against the defendant land company, and that their actions should be dismissed with prejudice, and the *lis pendens* notice of record cancelled and discharged. It was also stipulated that, upon the presentation and filing of the stipulation in each case, the court should forthwith, and without notice to either party thereto, make and enter an order dismissing the case with prejudice, no costs to be taxed to either party, and discharging the receiver and exonerating his bondsmen. It was further stipulated and agreed that the parties to each stipulation were fully satisfied with all the acts and doings of the receiver, Morris, and that the defendant land company was fully satisfied with all his acts and doings, and that at a meeting of the stockholders on April 2, 1921, by several resolutions duly and regularly adopted, it had ratified and confirmed the settlement made in the foreclosure actions and the acts of the receiver.

Upon the filing of the above stipulation, the court made and entered an order in each case on April 6, 1921, reciting the reading and filing of the stipulations entered into between the plaintiffs and defendant in each case, and ordered and adjudged that the causes be dismissed with prejudice; that the *lis pendens* notices be cancelled and dismissed; that no costs be taxed to either party, ''but that the receivership proceedings are not discharged and the receiver is required to file a report as heretofore ordered.''

Thereupon, on the same day, the defendant land company filed in court its verified petition asking the court to vacate and annul the order of March 17, 1921, requiring the receiver to file a report, and as grounds therefor alleged with great detail the formal proceedings of the stockholders and board of trustees of the land company approving and ratifying and confirming the acts of Morris, and the settlement made with the plaintiff in each of the actions, and prayed that the actions be dismissed and the receiver be discharged without requiring him to file reports. This petition was also joined in by the receiver, through his attorney, by way of a separate motion supported by the affidavit of his attorney.

Before the proceedings to vacate the orders of the court could be brought on for hearing and examination in the court below, Ewing, as relator, applied to, and obtained from the trial court, on April 8, 1921, an order to show cause, returnable on April 13, 1921, why Morris should not be punished for contempt for failure to file the reports required by the order of March 17, 1921. The order of March 17, 1921, was set forth in a written application signed by the attorneys for relator, and the application was supported by an affidavit by one of the attorneys for relator, referring to the order of

March 17, 1921, and of April 6, 1921, requiring the receiver to file a full and complete report of his receivership from the date of his appointment to the date of such report, and that Morris, as such receiver, had failed to comply with the orders and had failed to file in the court below any kind of a report as required to be filed in such orders, or any report. On the return day of the citation, Morris appeared in person and by his attorney and demurred to the application and affidavit upon the grounds that, (1) there was a defect of parties defendant; (2) that the application and affidavit did not, nor does either of them, state facts sufficient to constitute a cause of action; (3) that the application and affidavit do not, nor does either of them, state facts sufficient to require this defendant to appear and show cause why he should not be punished for contempt; (4) that the court has no jurisdiction of this cause.

The court overruled the demurrer, and appellant electing to stand upon his demurrer and refusing to plead or respond further, the court thereupon made and entered an order or judgment reciting the previous orders; reciting the taking of testimony, oral and documentary; reciting the refusal of Morris to plead further, and upon being asked by the court if he had any cause to show why the judgment of the court should not be pronounced upon him, said nothing except as before, standing on his demurrer, and challenging the jurisdiction of the court. It was therefore ordered and adjudged that he was in contempt, and that he be punished for such contempt by a fine of $100; and it was further ordered that unless he should file in the office of the clerk of the court his report as such receiver, as in the orders theretofore entered required, on or before 5 o'clock p. m. on the 23d day of April, 1921, he be taken into custody by the sheriff and confined in

the county jail of Benton county until he complied with the orders and filed the report required, and pay the costs and disbursements of the contempt proceeding. The order in contempt was thereupon superseded under a writ from this court, and the receiver has appealed.

Appellant first contends that he was not guilty of any contempt of court, and the court had no legal right or authority to cite and punish him as for a contempt, because a report was not filed as directed in the orders of the court, when the sole parties in interest had, timely and in good faith, moved the court on the same day the report was directed to be filed, April 6, 1921, and after the cause had been dismissed with prejudice by the court, for the vacation of that order because of changed conditions arising subsequent thereto.

Although this receiver was appointed in a mortgage foreclosure proceeding, under the authority of the statute providing therefor, and under stipulations of the parties that the receiver should be appointed, and that Morris should be the receiver, and also the fact that it is not a general receivership of an insolvent, nevertheless, a receiver is an officer of the court, and he is required to account to the court for all receipts and disbursements of the funds received by him. 23 R. C. L., § 143, p. 135.

"Generally speaking a receiver is not an agent, except of the court appointing him; the very term receiver negatives such an idea. He is merely a ministerial officer of the court, or, as he is sometimes called, the hand or arm of the court. . . . really representing the court, and acting under its direction, for the benefit of all the parties in interest. . . . His acts and possession are the acts and possession of the court. . . . The parties to the litigation have not the least authority over him; . . . His authority is derived solely from the act of the court appoint-

ing him, . . . and he is the subject of its order only.'' 23 R. C. L., § 2, p. 7.

While it is a very satisfactory arrangement for the parties to the actions for the person acting as receiver to report to them, and no doubt his operation of the properties in his hands was very satisfactory and profitable to them, he was under no legal duty to report to them, and was under legal duty to report to the court.

It is important for the courts to know whether the receivers that are appointed by them ''honestly and faithfully discharge their duties, and properly dispose of property and funds intrusted to their keeping, and whether they . . . can control their receivers, or whether their receivers shall control them.'' *Tindall v. Westcott,* 113 Ga. 1114, 39 S. E. 450, 55 L. R. A. 225.

We are emphatically of the opinion, therefore, that the court had jurisdiction of the cause, and that a stipulation to discharge the receiver without reporting to the court, filed by the parties, was of no force whatever as to the court. Neither was the fact controlling that the cases had been dismissed with prejudice by the court, for the reason that the court retained jurisdiction for the purpose of compelling the receiver to report as he had been theretofore ordered. Nor did the petition for the vacation of the order because of changed conditions arising subsequent thereto purge the receiver of contempt. The failure or refusal to comply with the order of the court or purge the contempt, is a continuing contempt, and the court may base judgment thereon. *Cobb v. Black,* 34 Ga. 162, *Tindall v. Westcott, supra.*

The proceedings to vacate the orders against the receiver requiring him to report may be appropriately presented to the court having charge and jurisdiction over the receiver, and may be sufficient to induce him

to vacate or modify his former orders and relieve the receiver of any further duty to the court, but until the court has so acted, the receiver is wilfully evading or disobeying the order of his superior that he report; and it cannot be argued with any great persuasion to us that the receiver is not guilty of any contempt in failing or refusing to report to the court which appointed him. It would have been easy, after the order of the court of March 17, 1921, for the receiver to have made a duplicate of the report which he made to the parties to the action, which was approved by them, and which might have been approved by the court; but he saw fit to ignore and disregard the power which controlled him, and considered only the parties to the litigation. There is no doubt, as said by appellant, that the mortgage companies had the absolute right to a dismissal of their foreclosure proceedings, either upon or without satisfaction of their debt; but no party has the absolute right to the discharge of a receiver appointed by the court until the court is through with him. Of course, the court appointing a receiver cannot arbitrarily keep the receiver under his control permanently, but he certainly can keep him in his control until the receiver has complied with a very valid order made by the court.

It is further contended that the court cannot compel the filing of a receiver's report upon the application of a stockholder of the defendant company who is not in anywise a proper or necessary party in the cause, where the company has fully settled and discharged its indebtedness, which was the subject-matter of the litigation, and where the action had been dismissed with prejudice. In the case of a receiver, it is of very little importance who moves to set in motion the power of the court to enforce compliance with its valid orders. Nor is it material whether any comprehensive pleading

or affidavit be filed. We do not understand that the judge can give no directions to the receiver except upon pleadings or applications of parties and findings thereon. The receiver is his officer and subject to his directions.

The remaining assignment of error is that the order or judgment of the court punishing the appellant for contempt is void. This is based upon the contention that the affidavit and application for the show cause order in contempt were wholly insufficient under the statute and confer no jurisdiction upon the court. The statute, § 1049, Remington's Compiled Statutes, regulates the proceedings for contempt and limits the punishment therefor, and provides, among other things: "(5), Disobedience of any lawful judgment, decree, order or process of the court;" is contempt.

Section 1052, Rem. Compiled Statutes, provides that, in cases other than those occurring in the immediate presence of the court, the facts constituting a contempt may be shown by an affidavit presented to the court or judicial officer.

Many of our own cases and cases from other jurisdictions are cited and quoted to the effect that the affidavit required by statute setting up the facts constituting the contempt must show that a copy of the order or decree constituting the basis of the proceedings was served upon him, and a demand duly made that he comply therewith, unless it appear that he had actual knowledge or notice of such order or decree, and such service or knowledge or notice must appear by appropriate affidavit, upon the face of the affidavit. Not so appearing, its jurisdiction is defective, does not meet the requirements of statute, and is insufficient to give the court jurisdiction to punish for contempt.

All the cases cited relate to cases where the alleged

contempt was committed out of the immediate presence of the court, or by a person not having or being charged with notice or knowledge of the order or decree alleged to have been violated. We concede that, in all cases of indirect or constructive contempt, it is necessary that all jurisdictional facts appear on the face of the affidavit or complaint, and cannot be made to appear by proof. And so, as in *State ex rel. Lindsley v. Grady,* 114 Wash. 692, 195 Pac. 1049, where the defendant was accused of violating the terms of an injunction decree and it did not appear from the proofs that he had any notice or knowledge of the terms of the decree, he not being a party to the action in any way, it was held that he could not be adjudged guilty of contempt. Also in *State ex rel. Olson v. Allen,* 14 Wash. 684, 45 Pac. 644, it was held that, where the affidavit used as a basis for contempt proceedings failed to show that it was within the power of the party prosecuted to comply with the order, the fact that proof subsequently introduced upon the trial tends to show that the one charged with contempt of court had the books in his possession which he was ordered to produce, but that he violated the order, is immaterial, when such fact is not shown by · the affidavit used as the basis for the proceeding.

But this is not the kind of a case illustrated by those decisions. This is a case of an officer of the court, continuously under the power and jurisdiction of the court, evading or disobeying a valid court order. He was present at the hearing, and was represented by his attorney. Notice or knowledge must necessarily be imputed to him. It is of vital importance that a receiver, as an officer of the court, obey the orders given him. Hence it is contempt for him to disobey the court's instructions. 6 R. C. L., § 8, p. 495. Negative acts may constitute direct contempt; as, for instance, the failure to produce a prisoner at the trial or hearing. 6 R. C.

L., § 4, p. 491.   *Ex parte Sternes,* 77 Cal. 156, 19 Pac. 275, 11 Am. St. 251.

"It is a general principle that a disobedience of any valid order of the court constitutes contempt, unless the defendant is unable to comply therewith."

6 R. C. L., § 15, p. 502; *Webb v. Webb,* 140 Ala. 262, 37 South. 96, 103 Am. St. 30.

The defendant may question the order which he is charged with refusing to obey only in so far as he can show it to be absolutely void; he cannot be heard to say that it was merely erroneous, however flagrant it may appear to be, since judgments of courts cannot be attacked collaterally for mere irregularities.   6 R. C. L., § 17, p. 505; *O'Brien v. People ex rel.,* 216 Ill. 354, 75 N. E. 108, 108 Am. St. 219.

We have found no case exactly parallel with the case in hand, nor has counsel on either side cited us to any. The nearest case discovered in our independent search which analogously decides many of the points involved in this case, from a state where a statute regulating proceedings in contempt exists, is that of *Tindall v. Westcott, supra,* from Georgia, which has been heretofore briefly quoted.   In that case, in reference to the necessity for sufficient pleadings against a receiver under the statute, further observation by the court is as follows:

"The receiver is his officer [of the judge] and subject to his directions and findings.   Suppose he deemed a certain action of the receiver necessary for the preservation of the fund, is he powerless to order it unless somebody presents pleadings about it?   Must he induce someone to plead and get a judgment before he can order the receiver to do some necessary thing?"

In *Frowley v. Superior Court of Modoc County,* 158 Cal. 220, 110 Pac. 817, a case cited by appellant, the supreme court of California adverted to the fact

that the defendant in that case was not a party to
the proceeding in which the order was made, and hence
knowledge of it could not be imputed to him.

We are of the opinion, therefore, that the willful
evasion or disobedience of the receiver of the valid
order of the trial court constituted direct contempt
for which the receiver could be proceeded against by
the court, of its own motion, and in that case no affi-
davit or application would be necessary, and only an
order or citation of the court setting up the facts con-
stituting the contempt and giving the defendant an
opportunity to be heard in his own defense was neces-
sary.  The sufficiency of the application and affidavit
is not necessary to determine.  It is only necessary to
determine the validity of the order requiring the re-
ceiver to report, and the validity of the order depend-
ing thereon, setting forth the orders previously made
requiring him to report, and his disobedience thereof,
and his failure to justify and purge himself of his con-
tempt, or show his utter inability to comply with the
orders.

We conclude that the judgment of the trial court
must be affirmed.

Affirmed.

Parker, C. J., Mackintosh, and Main, JJ., concur.

Hovey, J. (dissenting)—The appellant was ap-
pointed receiver in a proceeding to foreclose a mort-
gage.  The controversy having been disposed of, the
attorneys for both parties stipulated that the receiver
should be discharged.  A dissatisfied stockholder of
one of the parties seeks in this proceeding to set aside
the action of the corporation, of which he is a stock-
holder, in discharging the receiver without a final re-
port.  It seems to me that this is not the appropriate
place to dispose of that controversy, and that the neces-

sity for a final report having ceased, the previous order should be vacated and the receiver discharged in accordance with the stipulation. I am therefore unable to concur in the opinion of the majority.