[No. 43846. Department One. December 11, 1975.]

BRADLEY LAVE BRESOLIN, *Petitioner*, v. CHARLES MORRIS, *as Secretary of the Department of Social and Health Services, Respondent.*

*Richard Emery, Steven G. Scott, John G. Ziegler*, and *Allen Ressler*, for petitioner.

*Slade Gorton, Attorney General*, and *William C. Collins, Assistant*, for respondent.

UTTER, J.—Petitioner seeks a writ of mandamus ordering his transfer to the drug treatment program at Western State Hospital. Alternatively, if this motion is denied, he asks for an order adjudging respondent Charles Morris, as Secretary of the Department of Social and Health Services, in contempt of this court for failure to abide by our order entered December 2, 1974. That order directed respondent

to "make available to health authorities portions of correctional institutions under his jurisdiction for the isolation and treatment, at public expense, of petitioner" for narcotic addiction. The primary questions presented by this writ are the extent of petitioner's rights under the December 2, 1974 order and the nature of the proper remedy for this court to enter in enforcement of that order.

The proceedings leading to the entry of the order for isolation and treatment began with a petition filed by Bresolin on August 28, 1973, seeking his discharge from custody 'and alleging that he had been consistently and arbitrarily denied treatment for his narcotic addiction. Petitioner claimed this treatment was directed by RCW 69.32.090 and the eighth and fourteenth amendments to the United States Constitution. Hearings were held on the merits of the petition and this court referred to the Superior Court for Walla Walla County a series of questions upon which we desired to have evidence taken. Findings of fact were entered by the Superior Court on September 23, 1974. These findings indicated petitioner, who is now 31, is psychologically addicted to use of narcotic drugs and has been since he was 18, and that he was both physically and psychologically addicted at the times he committed the crimes for which he was imprisoned. His current incarceration resulted from the armed robbery of a narcotics dealer to obtain drugs. He is continuing to take drugs on a weekly to bi-weekly basis while at the penitentiary and these drugs include, occasionally, heroin. Although the diminished dosage he receives has cured his physical dependence, his psychological dependence on drugs remains. At the time the trial court heard testimony, there was no drug counseling available at the penitentiary, nor was there any form of therapy available at the institution to cure or rehabilitate narcotic addicts. The court found the State had the power and duty to provide petitioner treatment under RCW 69.32.090, which should be administered to him in light of his psychological addiction to drugs.

In response to the court's order, petitioner received a

letter on March 13, 1975, from respondent's legal counsel informing him that three alternatives were available: (1) transfer to the Washington State Reformatory to be screened for entry into the drug treatment program there which did not include an isolated treatment program; (2) remain at the Washington State Penitentiary and continue to participate in the social therapy program which was not a drug-oriented treatment program and did not include an isolated treatment program; or (3) wait for establishment of a drug treatment program at the Washington State Penitentiary which was then in the process of being funded for two counselors.

Petitioner, after receipt of this letter, moved to hold respondent in contempt or to have the court order him transferred to an existing drug treatment program at Western State Hospital. Petitioner's motion was withdrawn on May 29, 1975, as he believed he was then eligible for the program at Western State. Following respondent's refusal to transfer him there, petitioner again moved for a writ of mandamus ordering his transfer to the Western State Hospital program, or, if this was denied, an order finding respondent in contempt. It is this last motion that is before us at this time.

Respondent first contends that the court's order of December 2, 1974, focused too closely on certain language of RCW 69.32.090 and that when this statute is considered in the total context of RCW 69.32 and respondent's overall responsibility in administering this state's prisons, it does not require isolation for treatment. Respondent argues he has therefore adequately complied with the order of December 2, 1974, by making available the alternatives set forth in the March 13, 1975, letter.

The applicable statutes provide:

69.32.070 Suspected addicts — Treatment — Isolation. State, county and municipal health officers, or their authorized deputies, who are licensed physicians, within their respective jurisdictions are hereby directed and empowered, when in their judgment it is necessary to protect the public safety, health and morals, to make exami-

nations of persons reasonably suspected of being habitual users of any narcotic drug and to require persons whom they have reason to suspect to be habitual users of any narcotic drug to report for treatment to an approved physician, and continue treatment at his own expense until cured, or to submit to treatment, provided at public expense, until cured, and also to isolate or quarantine habitual users of such narcotic drugs or their derivatives. Such officer, deputy or physician shall make a written finding that such person is an habitual user of a narcotic drug, which finding shall be filed in his office: *Provided,* That such habitual users shall not be isolated or quarantined until the state board of health shall first, by general regulation, determine that the quarantine or isolation of all habitual users is necessary: *Provided, further*, That any persons suspected as herein set forth may have present at the time of his examination, a physician of his or her own choosing: *And provided further*, That the suspected person shall be informed by the health officer of his or her rights under this chapter.

69.32.090 Examination and treatment of convicted persons. Any person convicted under the provisions of RCW 69.32.080 or any person who shall be confined or imprisoned in any state, county, or city prison in the state and who may be reasonably suspected by the health officer of being a narcotic addict shall be examined for and if found to be an habitual user of said drugs, or any of them, shall be treated therefor at public expense by the health officers or their deputies who are licensed physicians. The prison authorities of any state, county, or city prison are directed to make available to the health authorities, such portion of any state, county, or city prison as may be necessary for a clinic or hospital wherein all persons who may be confined or imprisoned in any such prison, and who are habitual users of said drugs or their derivatives, may be isolated and treated at public expense until cured, or, in lieu of such isolation any such person may, in the discretion of the board of health, be required to report for treatment to a licensed physician, or submit to treatment provided at public expense, as provided in RCW 69.32.070. Nothing herein contained shall be construed to interfere with the service of any sentence imposed by a court as a punishment for the commission of crime: *Provided,* That licensed physicians treating any narcotic addict shall, upon beginning said

treatment, immediately report the same to the health officer in charge in that jurisdiction, such report to be on forms prescribed by the state board of health, and such report shall give the name of the person receiving such treatment and such other information as shall be deemed necessary by the state board of health.

The order of December 2, 1974, was a final order entered in a different cause, Supreme Court No. 42966. Respondent may only attack that order in a collateral proceeding if it is absolutely void, not merely erroneous. *State ex rel. Ewing v. Morris*, 120 Wash. 146, 207 P. 18 (1922); *State v. Lew*, 25 Wn.2d 854, 172 P.2d 289 (1946); *State ex rel. Superior Court v. Sperry*, 79 Wn.2d 69, 483 P.2d 608 (1971). A judgment is void only where the court lacks jurisdiction of the parties or the subject matter or lacks the inherent power to enter the particular order involved. *Dike v. Dike*, 75 Wn.2d 1, 448 P.2d 490 (1968); *see State v. Alter*, 67 Wn.2d 111, 406 P.2d 765 (1965); *cf. Bergren v. Adams County*, 8 Wn. App. 853, 509 P.2d 661 (1973); *Lange v. Johnson*, 295 Minn. 320, 204 N.W.2d 205 (1973). There is no such defect here and respondent's challenge to the order must fail for that reason.

The large number of persons affected by the issues raised here, however, makes it imperative for this court to dispose of this case on the merits of the arguments as well. Testimony of respondent's expert witness established that, in his opinion, 45 to 50 percent of the prison population at the Washington State Penitentiary were convicted of crimes where drugs were either a primary or secondary factor.

At the outset we take particular note of the legislative command in RCW 72.08.101 that "[t]he director of institutions shall provide for the establishment of programs and procedures for convicted persons at the state penitentiary, which are designed to be corrective, rehabilitative and reformative of the undesirable behavior problems of such persons, as distinguished from programs and procedures essentially penal in nature." This directive reinforces the specific statutory provisions governing the treatment of addicted

inmates. RCW 69.32.090 does not require the isolation of all persons addicted to narcotic drugs. The health authorities are given responsibility under RCW 69.32.070 and .090 to require narcotic addicts to report for treatment at public expense, both within and without the prison system. Narcotic addicts not already incarcerated may not be isolated until the board of health, by general regulation, determines isolation of all habitual users is necessary. The vital distinction, however, is that for those addicts who are confined in prison, the board of health need not determine by general regulation that isolation of all narcotic users is necessary before isolating and treating confined addicts. Prison authorities must provide health authorities with facilities where imprisoned addicts may be isolated, if needed, and treated. While under RCW 69.32.090 health authorities may require treatment of imprisoned addicts in the same manner as those outside prison are treated, the option of isolation must be provided. The current prison programs do not comply with the plain language of the statute, its spirit or the order of the court.

Testimony at the fact-finding hearing provided some insight into the need for the two different modes of treatment set out in the statute. At that hearing, Lyle Quasim, mental health administrator for the Department of Social and Health Services, Office of Mental Health, in charge of drug abuse programs in adult corrections, testified as one of the witnesses. Quasim stressed the need for two types of treatment: first, isolated therapeutic communities both inside and outside the penitentiary serving 35 to 40 people who have an extensive drug history; second, some program that is applicable to the penitentiary population similarly afflicted with drug problems. When asked why such programs were not available, Quasim stated the only reason was that the money was not provided. He indicated, "[t]here were herculean efforts made to encumber money at the levels that I exist at. We put in a supplemental budget request. We dealt with federal funding sources . . . . I was not successful in developing additional funding."

Quasim estimated the amount of funding needed to support the two-level program at the Washington State Penitentiary in 1974 was $195,000 a year; $125,000 for the isolated therapeutic community and $70,000 for the general program.

Both staff and residents of the Washington State Penitentiary expressed concern that if the programs instituted were superficial, people would be sent to the penitentiary and other institutions for programs that provided the illusion of help, but could not in fact help. Quasim saw the institutional programs as no panacea, but necessary to the care of addiction, in the same sense as kindergarten is a necessary first step for a college graduate. He stressed the need for continuing programs after release into the community.

Affidavits on file by the two counselors now employed in the Washington State Penitentiary drug program instituted since the 1974 hearing, indicate that although the program consists of educational, individual and group counseling and placement service for those on parole, it is not effective. The reason they gave for its ineffectiveness was that residents who participated in it had to return to the general prison population where the availability of drugs and the existence of a drug subculture nullify any gains. The residents of the penitentiary voted not to endorse the existing drug program because they would "rather have a real drug program than an educational program."

Petitioner is an adopted child who adjusted well to school and community and had no history of law enforcement contacts until after the death of his adoptive father in an industrial accident when Bresolin was 15. At age 16, he began drinking cough syrup containing codeine and later experimented with marijuana, heroin and amphetamines. He became addicted to drugs by age 18 and at 20 was convicted of burglary in the second degree in December 1963 after participation in the burglary of a drugstore to obtain narcotics. His presentence report at that time indicated a poor prognosis for future adjustment due to his

drug addiction. There were, however, no drug treatment programs available, either inside or outside the institution, and he was placed on probation. During this time he continued his involvement with use and sale of narcotics in both the Tacoma and Portland areas.

Bresolin was again convicted and sentenced in Portland in 1964 for attempting to obtain narcotics by forged prescription. By that time he was using heroin regularly and when it could not be obtained, he consumed as many as 20 bottles a day of cough medicine containing codeine. His deferred sentence on the Washington burglary conviction was revoked in 1965 and petitioner was initially sent to the Washington State Reformatory, but was transferred later to the Washington State Penitentiary because of his extensive drug involvement. There his counselor reported he was skeptical Bresolin would have the willpower to overcome his drug habit when released. Once again, however, there was no drug counseling or treatment program to help him overcome his addiction at any institution where petitioner had been confined.

He was released on June 15, 1971, and for a period of time was active on a methadone maintenance program. He was dropped in April 1972 for passing marijuana to another participant. He then became actively involved in the sale and use of heroin and shortly afterward was charged with grand larceny in King County and arrested on federal charges for sale of heroin as well as a state charge for robbery of a drug dealer. Bresolin was sentenced to the Washington State Penitentiary on the state drug charges and received a deferred federal sentence as well. On his return to the Washington State Penitentiary, his adjustment potential was evaluated. The penitentiary staff noted, "he has the potential to become a productive member of our society if and only when he can stay off drugs. It is evident that Bradley can't accomplish this alone."

The State of Washington, by its failure to fund and establish legislatively mandated drug treatment programs in the state's prisons, has constructed a maze for Bresolin

from which there is no escape. He is psychologically and has been physiologically addicted to drugs. All his crimes have been committed either to obtain drugs or money with which to purchase drugs. Due to lack of funding, no programs have been provided to help him cure this addiction, although the people of this state over 50 years ago, in Laws of 1923, ch. 47, § 7 (now RCW 69.32.090), expressed a mandate that such programs were necessary and must be provided. Use of drugs has resulted in confinement in institutions where his addiction is encouraged by the availability of narcotics. He is unable to escape either their physical presence or the prison drug subculture that encourages their use. On his release at the end of his term, nothing will have been accomplished by confinement except to confirm the physical and psychological needs which guarantee, once more, his involvement in criminal acts, followed by more confinement.

The Washington prison system has been the object of care and attention by successive Governors, legislatures, and the people of this state. Many innovative programs have been instituted to alleviate improper conditions in our prisons. And yet, even with our history of concern for prison conditions, there still exist in this state's prison system conditions which destroy the ability of drug-addicted inmates to prevent a repetition of the offenses which led to their incarceration. It may not be possible to effectuate rehabilitation for a particular inmate within a prison setting. The key to rehabilitation is as often found in the particular personality of the offender as it is in the availability of affirmative rehabilitative programs. On the other hand, there can be no justification for failure to follow the statutory mandate to provide the inmate the opportunity to participate in a rehabilitative program, focused on his drug addiction.

The Secretary has failed to comply with his statutory duties as well as the order of this court. Petitioner asks that the Secretary be held in contempt for this failure. Many alternatives are available to enforce our order. If the

Secretary's failure is willful, he could be found guilty of criminal contempt with its attendant sanctions. RCW 9.23.010(4) and (5). He could be held guilty of civil contempt and a fine imposed for failure to comply, regardless of good faith. RCW 7.20.010(5), 7.20.020. *Landman v. Royster*, 354 F. Supp. 1292 (E.D. Va. 1973). Alternatively, we could release or transfer petitioner. In *Inmates of Suffolk County Jail v. Eisenstadt*, 494 F.2d 1196, 1198 (1st Cir. 1974), the court upheld a district court order requiring that the State Commissioner of Corrections transfer jail inmates from facilities which were deficient. The court noted that the commissioner, in resisting the transfer order, "underestimates his own statutory duties respecting the Jail and its inmates . . ." *See Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971); *Rhem v. Malcolm*, 507 F.2d 333, 340-42 (2d Cir. 1974). In *Hamilton v. Love*, 328 F. Supp. 1182, 1194 (E.D. Ark. 1971), the court said "[i]f the state cannot obtain the resources to detain persons awaiting trial in accordance with minimum constitutional standards, then the state simply will not be permitted to detain such persons."

At this time we decline to order the transfer of petitioner to the drug treatment program at Western State Hospital. That program is designed only for persons who will be released into society within a short time after commencing treatment, and, as respondent notes, is not designed to treat an individual and then return him to an institution. Under the terms of petitioner's sentence, the length of his incarceration is subject to adjustment only by the Board of Prison Terms and Paroles. He likely will not be available for release within the short time contemplated by the Western State program. However, at the time when it appears to the administrative officials that petitioner satisfies all the criteria for admission into the Western State treatment program, he may be transferred there. We also do not rule on petitioner's constitutional claims inasmuch as the relief he seeks is available under existing statutes. *Kirkland v. Steen*, 68 Wn.2d 804, 416 P.2d 80 (1966).

Faced with similar problems of even greater magnitude than ours, the court in *Holt v. Sarver*, 309 F. Supp. 362, 383 (E.D. Ark. 1970), noted "[i]t is obvious that money will be required to meet the . . . deficiencies of the institution, and there is no reason to believe that, subject to the overall financial needs and requirements of the State, the Legislature will be unwilling to appropriate necessary funds." We share this optimism despite earlier legislative refusals to fund these programs and believe respondent should use the expertise available to him to tell this court, and through it the people of this state, how he plans to remedy the existing failure to abide by legislative mandates. To comply with our order we assume additional funding will be required and that requests for such funds will be directed to the legislature. Reports shall be made to this court monthly following the issuance of this order/opinion, describing respondent's progress, his plans, his efforts to secure funding, and the implementation of his plans. Petitioner's request to hold respondent in contempt will be continued pending our examination of his efforts to comply with this order and the order of December 2, 1974.

STAFFORD, C.J., and FINLEY, BRACHTENBACH, and HOROWITZ, JJ., concur.