[No. 43846.   En Banc.   January 7, 1977.]

BRADLEY LAVE BRESOLIN, *Petitioner,* v. CHARLES MORRIS, *as Secretary of the Department of Social and Health Services, Respondent.*

*Allen Ressler* and *John G. Ziegler,* for petitioner.

*Slade Gorton, Attorney General,* and *William C. Collins, Assistant,* for respondent.

Rosellini, J.—An inmate of the state's correctional institution at Walla Walla brought this action seeking mandamus to compel the Secretary of the Department of Social and Health Services to establish and maintain a drug rehabilitation program at the institution. In a previous hearing, we ordered the secretary to take steps to secure financing for isolated facilities for drug addicts, which were required under RCW 69.32.090, and to report to the court. *Bresolin v. Morris,* 86 Wn.2d 241, 543 P.2d 325 (1975).

After three reports had been rendered, the legislature enacted Laws of 1975, 2d Ex. Sess., ch. 103, which repealed RCW 69.32.090, and made the establishment of a drug treatment and rehabilitation program discretionary rather than mandatory.

■ In the meantime, we are advised that the petitioner has, in spite of his ineligibility, been transferred to Western State Hospital where he is enrolled in that institution's drug offender program. Since this was one of the alternative forms of relief which he sought in the original action, the case would appear to be moot. However, we are asked to consider the constitutional questions which were passed in the original opinion. The question of the constitutional duty of prison officials with respect to drug rehabilitation, we are told, is one of great public concern which will continue to recur in similar suits until the court answers the contentions raised.

Being assured by the parties that this case is as well prepared and argued as any that is likely to come before the court in the near future, we will dispose of these questions.

The petitioner contends that a prisoner has a right to treatment of his psychological dependence on drugs, for rehabilitative purposes, and that the denial of this right constitutes cruel and unusual punishment (forbidden by the eighth amendment to the United States Constitution and article 1, section 14, of the Washington State Constitution) as well as a deprivation of his liberty without due process of law and a denial of equal protection of the law.

The authorities cited do not establish these contentions. None of them holds that a prisoner in a penal institution has a right to rehabilitation, and none holds that the failure to rehabilitate amounts to cruel and unusual punishment.

It is established that prisoners do not lose all of their constitutional rights and that the due process and equal protection clauses of the Fourteenth Amendment follow them into prison and protect them there. *Washington v. Lee,* 263 F. Supp. 327, 331 (M.D. Ala. 1966), *aff'd and approved,* 390 U.S. 333, 19 L. Ed. 2d 1212, 88 S. Ct. 994 (1968); *accord, Smith v. Schneckloth,* 414 F.2d 680 (9th Cir. 1969).

As the federal district court in the latter case said, however, it is also settled that correctional authorities have wide discretion in matters of internal administration and

that reasonable action within the scope of this discretion does not violate a prisoner's constitutional rights.

■ The petitioner cites *Procunier v. Martinez,* 416 U.S. 396, 404–06, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974), for the proposition that rehabilitation is a basic penal goal, and reasons that because it is a goal, punishment is cruel and unusual if it fails to substantially further such rehabilitation. The United States Supreme Court in *Martinez* was concerned with the censorship of prisoners' mail in a state institution. Before deciding that such prisoners have a right of free speech and a right of access to the courts, both of which are subject to reasonable restrictions in furtherance of legitimate governmental interests, the court summarized the role of courts in solving prison administration problems. While the language was directed primarily to the question of the intervention of federal courts in state penal matters, its import is equally valid with respect to the role of state courts in such matters, if it is borne in mind that such courts have also the duty of protecting statutory rights of prisoners.[1]

The United States Supreme Court said:

> Traditionally, federal courts have adopted a broad hands–off attitude toward problems of prison administration. In part this policy is the product of various limitations on the scope of federal review of conditions in state penal institutions. More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention. Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most

[1] *See Bresolin v. Morris,* 86 Wn.2d 241, 543 P.2d 325 (1975).

require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.

But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.

(Footnotes omitted.)

The court in *Martinez* recognized that rehabilitation is a *governmental interest. Procunier v. Martinez, supra* at 412. It did not characterize it as a prisoner's right. The legislature in this state has also adopted rehabilitation as a penal goal. RCW 72.08.101.[2] But to say that the government has an interest in rehabilitation and that this is a legitimate institutional goal is one thing. To say that a prisoner has an enforceable right to such rehabilitation is another. The United States Supreme Court has spoken to that subject in a case not cited by the parties to this action but which we find to be directly in point and controlling.

That court, in *Marshall v. United States,* 414 U.S. 417, 421, 38 L. Ed. 2d 618, 94 S. Ct. 700 (1974), affirmed a holding of the Court of Appeals (*Marshall v. Parker,* 470 F.2d 34 (9th Cir. 1972)) that "there is no 'fundamental right' to rehabilitation . . . at public expense after conviction of a crime". In that case, the petitioner claimed that the Narcotic Addict Rehabilitation Act of 1966, 18 U.S.C. §§ 4251–

[2]"The director of institutions shall provide for the establishment of programs and procedures for convicted persons at the state penitentiary, which are designed to be corrective, rehabilitative and reformative of the undesirable behavior problems of such persons, as distinguished from programs and procedures essentially penal in nature." RCW 72.08.101.

4255, denied him due process and equal protection of the laws because it excluded persons in his situation from its benefits. Noting that no suspect classification was involved, the high court said that the correct standard to be applied was whether the statutory classification bore some relevance to the purpose for which the classification was made. The Congress, the court said, could reasonably find that some types of offenders were more likely to be susceptible and suitable to treatment than others, and could justifiably make classifications upon this basis.

There is no contention here that the drug treatment program at the state correctional institution discriminates among prisoners; rather, the factual allegation of the petitioner is that it is inadequate. Certainly, if a legislative body may enact a statute which discriminates among prisoners (upon a nonsuspect basis) in providing drug treatment, and may deny such treatment to some prisoners, it may constitutionally decide that no drug rehabilitation program shall be required at all.[3]

■■ The petitioner relies upon federal cases which have held that a prisoner is entitled to essential or reasonable medical care. We have no quarrel with this concept; however, the cases generally recognize that the burden is on the complainant to show that his disease or condition is amenable to medical treatment. For example, in *Smith v. Schneckloth, supra,* it was held that under the federal Civil Rights Act, 42 U.S.C. 1983, a complaint can be maintained in federal court if it alleges that a state prisoner suffering an acute physical condition and having urgent need for medical care was refused such care and suffered tangible injury thereby. But as that court pointed out, implicit in the formulation is the requirement of proof that medical treatment in fact exists and is available to state officials,

[3]Our recent cases of *State v. Starrish,* 86 Wn.2d 200, 544 P.2d 1 (1975) (observing in a footnote that the problem of treatment of alcohol problems of offenders is one for legislative resolution), and *Robinson v. Peterson,* 87 Wn.2d 665, 555 P.2d 1348 (1976) (holding that jail officials do not have a constitutional duty to provide rehabilitation programs) are in accord.

before their refusal to provide it can be said to violate the Fourteenth Amendment.

It should be emphasized that the petitioner is not contending that the institution withholds needed medication and medical treatment.[4] He makes no showing that there is an accepted method of treating psychological addiction, either within the confines of prison or without. At the same time, the respondent's authorities and affidavits stress the uncertainties which exist with respect to the efficacy of attempts to rehabilitate drug addicts, and particularly within the prison setting. That the entire concept of rehabilitation as a practical goal of confinement is under question can be appreciated by examining the current literature upon this subject. *See, e.g.,* L. Pierce, *Rehabilitation in Corrections: A Reassessment,* 38 Fed. Prob. No. 2, p. 14 (1974); J. Wilks & R. Martinson, *Is the Treatment of Criminal Offenders Really Necessary?,* 40 Fed. Prob. No. 1, p. 3 (1976); N. Morris & G. Hawkins, *Rehabilitation Rhetoric and Reality,* 34 Fed. Prob. No. 4, p. 9 (1970).[5]

Thus, the petitioner has not shown that there exists and is available to prison officials an accepted method of treating drug addiction in the prison environment. The respondent, on the other hand, has demonstrated that the department is not indifferent to the problems of drug addiction. In addition to its other rehabilitative programs,

---

[4] A law review article relied upon by the petitioner, in support of his claim that drug rehabilitation programs should be judicially required, goes no further than to advocate protection of the right to receive methadone for withdrawal symptoms and treatment of physical dependence, while at the same time recognizing that even this treatment is controversial. Comment, *The Rights of Prisoners to Medical Care and the Implications For Drug–Dependent Prisoners and Pre–trial Detainees,* 42 U. Chi. L. Rev. 705 (1975).

[5] An article by P. Dwyer & M. Botein, *The Right to Rehabilitation for Prisoners—Judicial Reform of the Correctional Process,* 20 N.Y.L.F. 273 (1974), cited by the petitioner, takes the view that the courts should intervene in prison management and order the establishment of maintenance of rehabilitation programs. The authors assume, without citation of evidence, that rehabilitation is an achievable prison goal. They do not address the specific problem of rehabilitation of drug addicts.

the institution at Walla Walla (which is the institution here under attack) offers drug counseling to those who are willing to accept it. While this program may be termed minimal, the consensus of opinion appears to be that, as a practical matter, drug rehabilitative programs within the prison environment are nonproductive. Psychological assistance to motivated prisoners who are shortly to be released or paroled offers some hope of success, and to this end the program at Western State Hospital, to which the petitioner has been prematurely transferred, has been established.

In the meantime, the Secretary and those charged with the responsibility of administering the prison system are constantly reexamining their programs and policies and the available and evolving alternatives, with a view to fulfilling to the best of their capacity the statutory goal of rehabilitation. The petitioner makes no showing that these efforts are pursued with less than good faith or that any superior alternatives to the existing programs and methods presently exist and are available to the respondent. We need not decide whether, if such a showing were made, judicial intervention would be appropriate. As the record stands, there is nothing here to indicate that the low incidence of drug rehabilitation is occasioned by any breach of duty on the part of the respondent.

We find no constitutional violation in the failure to provide a more extended drug rehabilitation program within the institution.

The writ is denied.

STAFFORD, C.J., and HAMILTON, WRIGHT, BRACHTENBACH, and DOLLIVER, JJ., concur.

UTTER, J. (dissenting)—The majority contends this court is helpless to act in the face of the failure of the State to provide meaningful assistance to the petitioner, a narcotic addict who has demonstrated a willingness and desire to cure his addiction, when State action exacerbates his

addictive personality by placing him in a closed setting where the sale and use of drugs apparently cannot be effectively controlled.

This is not, should not, and cannot be the law. For this court to hold that it is assures the continued explosive degeneration of the addicts confined to our institutions and creates a great likelihood that such individuals will do further injury to society when they are eventually released. The United States Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 102–04, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), has recognized as repugnant to the Eighth Amendment "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,'" and that infliction of unnecessary suffering is "inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that 'it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'" (Footnote omitted.)

The relief here requested does not require, as the majority insists, the recognition by this court of a constitutionally based broad right of rehabilitation. In its present facutal framework this case presents a narrow, albeit important, issue concerning the constitutional rights of inmates confined to state institutions: Does a prisoner who is psychologically addicted to narcotics have the right to demand some protection from the demonstrable physical and mental harm which he suffers as a result of being confined to an institution in which he is unavoidably exposed to unlawful trade in and use of hard narcotics, which prison officials are unable to prevent? I conclude that the State is constitutionally compelled to provide protection from harm of this nature and therefore dissent.

The record establishes that, prior to his recent and more than coincidental transfer to Western State Hospital, the petitioner was incarcerated at Walla Walla State Penitentiary where there is extensive unlawful use of hard drugs, including heroin, amphetamines, and hallucinogens. This

drug culture allegedly involves not only prisoners, but staff and visitors as well. Prison personnel have, under existing conditions, been unable to do anything to significantly curtail this activity, nor have they provided a means by which prisoners who wish to do so, may seek sanctuary from its adverse effects. Such a situation not only results in the creation of an environment in which it is extremely difficult for most inmates who have the desire to rehabilitate themselves, but in the case of the petitioner and others like him, makes debilitation inevitable. As we stated in our prior opinion in this case, the petitioner

> is psychologically and has been physiologically addicted to drugs. All his crimes have been committed either to obtain drugs or money with which to purchase drugs. Due to lack of funding, no programs have been provided to help him cure this addiction . . . Use of drugs has resulted in confinement in institutions where his addiction is encouraged by the availability of narcotics. He is unable to escape either their physical presence or the prison drug subculture that encourages their use. On his release at the end of his term, nothing will have been accomplished by confinement except to confirm the physical and psychological needs which guarantee, once more, his involvement in criminal acts, followed by more confinement.

*Bresolin v. Morris,* 86 Wn.2d 241, 249, 543 P.2d 325 (1975).

Faced with this situation, the petitioner has made great efforts to secure placement in a drug treatment program. As the majority points out, the petitioner has recently been transferred to the drug treatment program at Western State Hospital. That placement is unusual, to say the least. In the long history of this case, the petitioner first sought treatment under RCW 69.32.090. This court then ordered, in the words of the statute, that respondent "make available to health authorities portions of correctional institutions under his jurisdiction for the isolation and treatment, at public expense, of petitioner." Respondent failed to do so and petitioner sought placement in the Western State

Hospital drug treatment program. Respondent resisted that placement, stating in the Brief of Respondent at pages 1–2:

[I]t is used primarily as a stepping stone back to the streets and is not designed to treat an individual and then return him to an institution . . . The treatment program at the hospital is of limited duration (about 18 months) and the program is of limited size (30 people). Because of the physical layout of the hospital, it is not considered a "secure" facility. It has no walls, fences or guards, limiting the types of persons it can take and clearly indicating it was not established to provide immediate drug treatment for all prison inmates who might be found to be narcotics addicts.

Petitioner has not been transferred to Western State Hospital because of his long sentence. He is presently serving the first of three five–year mandatory minimum terms based upon deadly weapon findings, *State v. Bresolin,* 13 Wn. App. 386 (1975), and in fact has no tentative release date yet established because of his consecutive sentence structure. He also has a federal detainer, based on a federal conviction, lodged against him which prevents his parole, except to federal custody, . . .

The court has been informed by counsel for the respondent, at the time of the most recent hearings in this case, that these underlying facts have not significantly changed. Respondent has not contended Bresolin now fits the established criteria for the Western State program.

It is difficult to view Bresolin's recent transfer to the Western State program, in view of respondent's past position, as little more than an effort by the respondent to render moot the important issues raised by this case. Bresolin's placement at Western State does not, however, moot these issues as to other inmate/addicts who, as the undisputed evidence indicates, desire and would benefit from placement in a drug treatment program. These inmates are still incarcerated in the state penitentiary under conditions and with resulting harm identical to that of the named petitioner here.

The legislature has expressly repealed RCW 69.32.090 (*see* Laws of 1975, 2d Ex. Sess., ch. 103), the statute which

we found controlling in our prior opinion in this case. While the present statutory scheme clearly allows the establishment of drug treatment programs, and I feel in a factual setting such as this requires them (RCW 72.08.101), the record is devoid of any indication that the respondent intends to implement an adequate program at the state penitentiary at any time in the near future.[6]

As the majority suggests, courts have shown reluctance to become involved in the inner workings of our penal institutions. The power of the courts to intervene to protect inmates from conditions which threaten their health or safety, or which are violative of a basic constitutional right is clearly established. *See, e.g., Estelle v. Gamble, supra; Procunier v. Martinez,* 416 U.S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974)(prison mail censorship regulations held violative of inmates' First and Fourteenth Amendment rights); *Gates v. Collier,* 501 F.2d 1291 (5th Cir. 1974)(confinement under conditions which threaten physical health and safety and deprive inmates of basic hygiene and medical treatment constitutes "cruel and unusual punishment"); *Riley v. Rhay,* 407 F.2d 496 (9th Cir. 1969)(claim by inmate of Washington State Penitentiary that failure to provide medical care violated his constitutional rights states cause of action under the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, 1985); *Pugh v. Locke,* 406 F. Supp. 318 (M.D. Ala. 1976)(failure to protect inmates from the constant threat of physical harm constitutes cruel and unusual punishment).

Where deprivation of needed medical care is added to the imprisonment imposed as punishment for commission

---

[6]The trial court, in its hearing on this matter, expressly found that "[t]here is no form of therapy available to the Petitioner at the Penitentiary which has any probability of curing his condition." In an affidavit submitted in this case dated June 16, 1976, Harold Bradley, Director of Adult Corrections Division of the Department of Social and Health Services, stated the existing drug treatment program at Walla Walla would continue at "essentially the same level as it has been in the past . . ."

of a crime, the additional suffering imposed thereby constitutes cruel and unusual punishment and provides justification for our intervention to alleviate that additional suffering. *Estelle v. Gamble, supra; Ramsey v. Ciccone,* 310 F. Supp. 600 (W.D. Mo. 1970). Moreover, due process requires additional proceedings to justify failure of the state to protect an inmate from any harm greater than that contemplated by his incarceration. *New York Ass'n for Retarded Children, Inc. v. Rockefeller,* 357 F. Supp. 752 (E.D.N.Y. 1973); *Baxstrom v. Herold,* 383 U.S. 107, 15 L. Ed. 2d 620, 86 S. Ct. 760 (1966).

The trial court found, pursuant to our order of referral, that:

> The Petitioner is psychologically addicted to the use of narcotic drugs. Psychological addiction is the primary cause of drug usage. Drug treatment programs have as their primary focus the cure of psychological addiction. . . .
>
> . . .
>
> . . . [The petitioner's] psychological addiction leads him to obtain and use narcotic drugs when he is able to do so.
>
> . . .
>
> . . . There is no form of therapy available to the Petitioner at the Penitentiary which has any probability of curing his condition.

The evidence presented at this fact–finding hearing further establishes that the petitioner has actively sought aid in dealing with his drug problems while not in prison. No such programs are available to him, or other inmates, at the penitentiary. Yet, because of his confinement and the failure of prison officials to control illegal drug activity within the walls of the institution, it is impossible, at the present time, for an addicted inmate to avoid continued involvement with drugs, no matter how determined he might be to forsake them. This would not be the case but for the inability of the institution staff to adequately control the prison environment, coupled with the failure to provide addicts who *affirmatively seek help* an environment in

which to begin to rebuild their lives. Confinement under the present conditions only intensifies such an individual's psychological addiction, with the result that when he is thrust once again into society's mainstream, it will be even more difficult for him to avoid further involvement with drugs and additional confinement.

Contrary to the assertion of the majority, the uncontroverted testimony of expert witnesses in the superior court fact–finding hearing established that the petitioner and others like him are indeed treatable and that such treatment is a necessity.[7] While there is considerable conflict among experts as to which of a number of techniques would be most beneficial to addicts, most authorities seem now to assume that effective treatment can be provided. See S. Levine, *Narcotics and Drug Abuse* 311 (1973); R. Bonnie & M. Sonnenreich, *Legal Aspects of Drug Dependence* 171– 80 (1975); *Drug Addiction and Treatment in the District of Columbia, Hearing Before the Subcomm. on Public Health, Education, Welfare, and Safety of the Comm. on the District of Columbia United States Senate,* 92nd Cong., 1st Sess. (1971); G. Swanson, *Law Enforcement and Drug Rehabilitation: Is a Bridge of Trust Possible?* 4 Contemporary Drug Problems 493 (1975).[8]

---

[7]Lyle Quasim, a qualified expert, testified as follows: "Q. [by Mr. Emery]: Can you treat the psychological addiction in prison? A. Yes, you can treat psychological addiction in prison. . . . I think that we can make some significant inroads into dealing with the psychological process in the penitentiary." Gene Chontos, another expert, testified as follows: "Q. [by Mr. Emery]: Do you conclude that drug treatment in prison is an absolute necessity as a grounding for successful treatment of an addict who is in prison and who will be released later on? A. I think, yes, it's necessary. It's definitely necessary just to build trust that you can transfer outside. . . . Q. [by the Court]: In other words, and assuming the law is that you can't interfere with his prison sentence while you are treating him, there are available to the State forms of medical or psychological therapy which could be administered to this petitioner at the penitentiary beneficially in the light of his present physical and mental condition? A. If the funds were free enough to do that. If there were money available, I would say yes." The record is replete with similar statements.

[8]Expert testimony at the fact–finding hearing was to the effect that the most effective drug treatment program would involve isolated therapeutic communities

The record in this case clearly establishes that the failure to make such treatment available to the inmate/addict who affirmatively seeks it does substantial harm to that individual, as well as society as a whole. *See Bresolin v. Morris, supra* at 247–49. Though it may be true that the Supreme Court has not recognized the existence of a "'fundamental right' to rehabilitation from narcotics addiction . . ." (*Marshall v. United States,* 414 U.S. 417, 421, 38 L. Ed. 2d 618, 94 S. Ct. 700 (1974)),[9] it is clear that a person may not be punished simply for being an addict, *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962), and has a constitutional right to protection from direct harm caused by the failure of prison officials to keep order. *Gates v. Collier, supra; Pugh v. Locke, supra.*

In a situation such as that before us, the right to be free of official indifference to the need for medical treatment and protection from harm, which is constitutionally required, forms thè basis for petitioner's claim. An accepted part of medical treatment is often the healing of the mind. *See, e.g.,* Howard R. & Martha E. Lewis, *Psychosomatics* (1972); L. Keiser, *The Traumatic Neurosis* (1968). Such healing of the mind is necessary to treat psychological addiction for the purpose of providing the inmate with the defense mechanisms necessary to survive as a nonaddict in the drug culture existing inside the prison. The trial court

of approximately 35 to 40 members each. These groups would include those addicts who had affirmatively and sincerely sought help in curing their drug addiction. In addition, some apparently less intensive program was indicated to be desirable to serve the approximately 300 members of the prison population who are primarily or secondarily involved with the drug culture but do not seem to be prime candidates for successful isolated treatment.

[9] I disagree with the majority's conclusion that the Supreme Court's decision in *Marshall* controls our disposition of this case. The Supreme Court affirmed the determination of the Court of Appeals that the eligibility classifications contained in the federal statute there at issue, which rendered the particular addict there considered ineligible for discretionary rehabilitative commitment, did not violate the petitioner's right to equal protection. The court was not considering the right of an inmate to be protected from the specific harm caused him by the inability of the state to keep order within its institutions. It is that issue which is before us here.

found on the basis of expert testimony that the primary means of treating addiction is to combat the psychological roots of this "disease." *Robinson v. California, supra* at 667 n.8. It is entirely inappropriate to deny the addict protection from the harm which the prison environment causes him, simply because the appropriate means of implementing those constitutional rights requires treating his mind.

I therefore conclude the established right of the petitioner and others similarly situated to be free of cruel and and unusual punishment (U.S. Const. amend. 8; Const. art. 1, § 14) and the due process right to be free from direct harm not contemplated by the sentencing court, create in these circumstances a concomitant obligation on the part of the State to provide adequate treatment to ameliorate the harm caused those addicts who affirmatively seek help with their drug problems. Such a result is required because it is the failure of the State, (presumably due to inadequate facilities and staffing), to bring under control unlawful activity within the penitentiary which creates the particular harm suffered by this petitioner and others like him.

I would deny respondent's motion to dismiss and order the respondent to take appropriate action to provide meaningful drug treatment programs for individuals whose circumstances are similar to the petitioner's, and further order that the respondent report to this court on a monthly basis as to his progress in this endeavor.[10] We must assume that the respondent, like all citizens of this state, will obey the

---

[10]The power of the courts to enforce such obligations is well established. In recent years the courts of this nation have utilized various remedies in an effort to protect the constitutional rights of persons confined to prisons. Traditionally, the courts have allowed relief in the form of contempt citations, injunctive relief, or, particularly in section 1983 actions, damages. More recently, the courts have found it appropriate to utilize remedies which are quite broad in scope, including: enjoining institutions from accepting new prisoners until populations within the institutions are reduced; ordering specific institutional changes; and, appointing special masters or committees to enforce orders of the court requiring specific reforms. *See* Comment, *Cruel But Not So Unusual Punishment: The Role of the Federal Judiciary in State Prison Reform,* 7 Cumberland L. Rev. 31 (1976), and cases cited therein.

commands of this court and therefore see no need at this time to consider what further remedies may prove appropriate or necessary.

HOROWITZ, J., concurs with UTTER, J.

HUNTER, J. (dissenting)—I concur with the dissent except for the mandate requiring the respondent to make monthly reports to this court regarding the success of the treatments, in which respect, I dissent to the dissent.