**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILE**

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 18, 2021

~~González, C.J.~~
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 18, 2021

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 98201-5 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| JERRY LYNN PETERSON, | ) | |
| | ) | |
| Respondent. | ) | Filed: <u>November 18, 2021</u> |
| | ) | |

GONZÁLEZ, C.J.—Jerry Lynn Peterson pleaded guilty to the sale of heroin in violation of RCW 69.50.410 of the Uniform Controlled Substances Act (UCSA). She now asks us to hold that RCW 69.50.410, if not all of the UCSA, is invalid and unconstitutional because, she contends, the statute has been impliedly repealed and, among other things, violates the privileges and immunities clause of the state constitution. Accordingly, she argues, the charges against her must be dismissed. The judicial branch has the power to declare a statute or its application unconstitutional or invalid under narrow circumstances. *See, e.g.*, *State v. Blake*, 197 Wn.2d 170, 183, 481 P.3d 521 (2021); *State v. Gregory*, 192 Wn.2d 1, 19, 427 P.3d 621 (2018) (plurality opinion). In the absence of those circumstances, we are bound by our role in our divided government to uphold and apply the laws

properly enacted by our elected legislative bodies. Our elected state legislature has the constitutional power (within constitutional constraints) to define and redefine crimes and punishments. Finding no constitutional infirmity in the statute, we reject Peterson's arguments and remand for resentencing.

BACKGROUND

Peterson was charged with and pleaded guilty to selling heroin for profit under RCW 69.50.410(1).[1] Verbatim Report of Proceedings (VRP) (Mar. 27, 2018) at 2-7. RCW 69.50.410 is part of the UCSA. The UCSA and the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, provide different sentences for selling controlled substances. Peterson initially argued that RCW 69.50.410(3)(a)'s 2 year sentence applied, rather than the 68+ to 100 month sentence under the SRA.[2] VRP (June 13, 2018) at 13-14.

Both the trial court and the Court of Appeals agreed that the UCSA's two year sentence applied. VRP (June 13, 2018) at 15; *State v. Peterson*, 12 Wn. App. 2d 195, 199, 457 P.3d 480 (2020). The State petitioned for our review and argued that the SRA should provide the applicable sentence. Meanwhile, we announced our decision in *State v. Cyr*, where we concluded that the SRA provides the

---

[1] Peterson also pleaded guilty to possession of a controlled substance. While this charge is not before us, we note that we recently held that the statute prohibiting this crime, former RCW 69.50.4013 (2015), is unconstitutional. *Blake*, 197 Wn.2d at 183.

[2] This sentence was based in part on Peterson's criminal history.

2

applicable sentences for UCSA convictions. 195 Wn.2d 492, 508, 461 P.3d 360 (2020). Both parties submitted additional briefing on *Cyr*'s applicability, and we granted review. 195 Wn.2d 1023 (2020). Peterson subsequently conceded that the SRA controls her sentence and joined amici curiae Washington Association of Criminal Defense Lawyers, the American Civil Liberties Union of Washington, and the Washington Defenders Association (Amici Curiae or Amici) in arguing that RCW 69.50.410 is invalid and unconstitutional. We called for additional briefing on these issues.

## ANALYSIS

We review the validity and constitutionality of a statute de novo. *Cyr*, 195 Wn.2d at 498 (quoting *In re Pers. Restraint of Cruz*, 157 Wn.2d 83, 87, 134 P.3d 1166 (2006)); *State v. Villela*, 194 Wn.2d 451, 456, 450 P.3d 170 (2019) (quoting *State v. Lanciloti*, 165 Wn.2d 661, 667, 201 P.3d 323 (2009)). We begin by determining the meaning of RCW 69.50.410. In determining the meaning of a statute, "our 'primary goal . . . is to ascertain and give effect to the legislature's intent and purpose.'" *Cyr*, 195 Wn.2d at 501-02 (alterations in original) (quoting *Cruz*, 157 Wn.2d at 87). "[W]e must ʿconsider[] the statute as a whole, giving effect to all that the legislature has said, and using related statutes to help identify the legislative intent embodied in the provision in question.'" *Id.* at 502 (quoting *Cruz*, 157 Wn.2d at 88) (second alteration in original) (internal quotation marks

omitted). If possible, we must "harmonize and give effect to all of the relevant statutory language." *Id.* (citing *State v. Hirschfelder,* 170 Wn.2d 536, 543, 242 P.3d 876 (2010)). As the party challenging the statute, Peterson bears the burden of establishing that RCW 69.50.410 is unconstitutional or invalid. *See Villela*, 194 Wn.2d at 456 (citing *Lanciloti*, 165 Wn.2d at 667).

Peterson argues that RCW 69.50.410 has been repealed by implication, is invalid under the doctrine of desuetude, and is unconstitutional under article I, section 12 of the Washington Constitution. She also contends that RCW 69.50.410 is not severable from the remainder of the UCSA, rendering the entire act invalid. We turn now to these issues.

I.      Repeal by Implication

Peterson and Amici argue that RCW 69.50.410 has been repealed by implication. Repeal by implication is strongly disfavored. *Amalg. Transit Union Legislative Council v. State*, 145 Wn.2d 544, 552, 40 P.3d 656 (2002) (citing *Tollycraft Yachts Corp. v McCoy*, 122 Wn.2d 426, 439, 858 P.2d 503 (1993)). Such a repeal will be found only where (1) a "later act covers the entire field of the earlier one, is complete in itself, and is intended to supersede prior legislation" or (2) "the two acts cannot be reconciled and both given effect by a fair and reasonable construction." *State v. Conte*, 159 Wn.2d 797, 815, 154 P.3d 194 (2007) (citing *Amalg.*, 145 Wn.2d at 552). Neither situation exists here.

*State v. Peterson*, No. 98201-5

Peterson and Amici claim that RCW 69.50.410 and the sentencing provisions of the SRA cannot be reconciled and both given effect by a fair and reasonable construction. They argue that RCW 69.50.410 cannot be given effect, in part, because its rehabilitative intent has never been met. (Second) Suppl. Br. of Peterson at 7; Br. of Amici Curiae in Supp. of Pet'r at 17-18. But based on the plain language and legislative history, when the legislature passed RCW 69.50.410 it clearly intended to punish.

The UCSA was passed in 1971 during a nationwide effort to reform drug sentencing laws. LAWS OF 1971, 1st Ex. Sess., ch. 308; *Report of the Task Force on the Use of Criminal Sanctions to the King County Bar Association Board of Trustees*, 30 FORDHAM URBAN L.J. 499, 506 (2003). Almost all states passed some form of the UCSA, which paralleled the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236, also known as the "Controlled Substances Act." *Report of the Task Force*, *supra*, at 506; *see also Seeley v. State*, 132 Wn.2d 776, 782, 940 P.2d 604 (1997). Both state and federal laws were "comprehensive statutory mechanism[s] to control the manufacture, distribution, and use of controlled substances" with "[p]enalties . . . imposed for violations." *Seeley*, 132 Wn.2d at 782. Our 1971 UCSA did not include addiction treatment or rehabilitation for drug users. *See* LAWS OF 1971, 1st Ex. Sess., ch. 308.

5

*State v. Peterson*, No. 98201-5

RCW 69.50.410 was passed two years later.  LAWS OF 1973, 2d Ex. Sess.,

ch. 2, § 2.  The statute states that

> (1) Except as authorized by this chapter it is a class C felony for any person to sell for profit any controlled substance or counterfeit substance classified in Schedule I, RCW 69.50.204, except leaves and flowering tops of marihuana.
> . . . .
> (3)(a) Any person convicted of a violation of subsection (1) of this section by selling heroin shall receive a mandatory sentence of two years in a correctional facility of the department of social and health services and no judge of any court shall suspend or defer the sentence imposed for such violation.

RCW 69.50.410.[3]  When enacted, the statute was entitled "Controlled Substances –

Mandatory Sentences," and the legislature's intent was, at best, to provide some

option for rehabilitation while imposing harsh mandatory sentences.  It was based

on House Bill 323, which provided "mandatory sentencing for certain violations

involving controlled substances."  HOUSE JOURNAL, 43d Leg., 1st & 2d Ex. Sess.,

at 1742 (Wash. 1973).  Legislative discussions about the bill clearly demonstrate

the intent to put a "very highly mobile group" of "very hard drug sellers" who

could be "found moving constantly between Vancouver, British Columbia, and

down as far as San Diego" "out of business and behind bars."  *Id.* at 1756, 1744.

Even when vetoing the bill for technical reasons, Governor Daniel Evans explained

that "[t]his bill would have created mandatory sentences for persons convicted of

---

[3] Heroin is a Schedule I controlled substance. RCW 69.50.204(b)(11).

6

certain types of crimes involving sale of drugs. I am in full agreement that we need stiff penalties for certain offenders, especially where the offender has earned enormous sums from the sale of drugs." LAWS OF 1973, 2d Ex. Sess., ch. 2, § 2. The legislature promptly overturned the governor's veto. *Id*.

Simply put, RCW 69.50.410(3)(a) as well as (2)(b) and (3)(b) impose mandatory minimum sentences for people selling heroin and other Schedule I drugs. This is particularly striking because, at the time the statute was passed, sentencing in our state was indeterminate. *See* ch. 9.95 RCW. Under this indeterminate sentencing system, trial courts sentenced offenders to the maximum amount of time that could be served and, usually, the former Board of Prison Terms and Paroles (Board) set the minimum term. RCW 9.95.010, .040. At that time, few statutes imposed mandatory minimums. *See, e.g.*, Richard C. J. Kitto, Jr., Comment, *A Perspective on Adult Corrections in Washington*, 51 WASH. L. REV. 495, 499 (1976). RCW 69.50.410 was one such statute. *Id.* at 499 n.27; *Cyr*, 195 Wn.2d at 509 (RCW 69.50.410(3)(b) "explicitly sets a mandatory *minimum* term").[4]

The sentences imposed under RCW 69.50.410 were to be served in a "correctional facility of the department of social and health services." Former

---

[4] RCW 69.50.410(4), which was added in 1999 to allow extraordinary medical placement, notably uses the language "mandatory minimum term" to refer to the previous portion of the statute. *See* LAWS OF 1999, ch. 324, § 6.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

RCW 69.50.410(2), (3) (1973).  Out of historical context, this might seem like evidence the legislature had a rehabilitative intent, but these facilities were simply prisons.  But the Department of Corrections (DOC) was not created until 1981; the Department of Social and Health Services (DSHS) ran prison facilities prior to that time.  LAWS OF 1981, ch. 136, § 3.  The law that created the DOC transferred authority from DSHS to DOC.  *Id.* § 4; *see also State v. McGinley*, 18 Wn. App. 862, 868, 573 P.2d 30 (1977) ("RCW 69.50.410 establishes mandatory *prison* sentences for persons convicted of selling certain drugs." (emphasis added)).

We do not agree with Peterson that RCW 69.50.410 was intended to rehabilitate drug sellers.  As originally passed, this statute created an extraordinarily narrow window for drug users who could, prior to charging, submit themselves for treatment to avoid prosecution.  Former RCW 69.50.410(5) (1973); LAWS OF 1973, 2d Ex. Sess., ch. 2, § 2(5).  Amici may well be correct that the legislature's repeal of RCW 69.32.090, a statute requiring DSHS to provide drug rehabilitation in prisons, made full compliance with RCW 69.50.410 impossible.  Br. of Amici Curiae in Supp. of Pet'r at 18.  But we find no evidence that RCW 69.50.410 carries on the original work of RCW 69.32.090.  RCW 69.32.090 required prison authorities to provide drug treatment and rehabilitation to "habitual users" currently in prison facilities.  Former RCW 69.32.090 (1923), *repealed by* LAWS OF 1975-76, 2d Ex. Sess., ch. 103, § 3; *Bresolin v. Morris*, 86 Wn.2d 241,

8

244, 543 P.2d 325 (1975) (*Bresolin* I) (citing the former RCW 69.32.090).  RCW 69.50.410 was not passed until 50 years later.  LAWS OF 1973, 2d Ex. Sess., ch. 2, § 2.

Peterson also suggests that *Bresolin* I supports her theory that RCW 69.50.410 was intended to rehabilitate.  We disagree.  In *Bresolin* I, this court held that the secretary of DSHS had "failed to comply with his statutory duties as well as the order of this court" to fund and provide drug treatment for prisoners under former RCW 69.32.090.  *Bresolin* I, 86 Wn.2d at 249.  Peterson conflates the drug treatment requirements in former RCW 69.32.090 with the correctional facilities of DSHS mentioned in RCW 69.50.410.  Answer to Pet. for Review at 5.  But *Bresolin* I did not involve the UCSA, and there is no mention whatsoever of RCW 69.50.410.  Bresolin was incarcerated for "armed robbery of a narcotics dealer to obtain drugs," not for the sale of drugs.  *Bresolin* I, 86 Wn.2d at 242.  Bresolin sought drug treatment while in prison.  *Id.* at 241.  By comparison, RCW 69.50.410's safe harbor provision allows drug-addicted people to voluntarily apply to a rehabilitation program *prior to prosecution*.  RCW 69.50.410(6) ("Any person . . . who voluntarily applies . . . shall be immune from prosecution.").  While it is true the statute provides some form of drug treatment, this safe harbor provision is distinct from treatment that could be offered to people in prison *after* they have been prosecuted and sentenced.

In fact, the only mention of RCW 69.50.410 in relation to former RCW 69.32.090 is when the legislature amended .410 in 1975. LAWS OF 1975, 2d Ex. Sess., ch. 103. Senate Bill 3281, entitled "Drug Treatment Programs," appears to be a legislative "fix" after the Supreme Court's decision in *Bresolin* I, where the court ordered DSHS to secure financing for drug rehabilitation and report to the court. *See* HOUSE JOURNAL, 44th Leg., 2d Ex. Sess., at 790 (Wash. 1975) (testimony of Representative A.A. Adams ("If this bill does not pass then the department and all the secretaries would be in contempt of court . . . . There is a case that was brought to them, a young man within a penitentiary, and because of the old law he went to court and he did win the case. . . . This bill will take [DSHS] off the hook in that regard and allow them to treat people where and when they want to.")); *see also Bresolin v. Morris*, 88 Wn.2d 167, 168, 558 P.2d 1350 (1977) (*Bresolin* II) (noting that the legislature repealed former RCW 69.32.090 after DSHS had provided several reports to the court as mandated in *Bresolin* I). In Senate Bill 3281, the language of the safe harbor provision in RCW 69.50.410 was modified, and a number of prior laws were repealed, including former RCW 69.32.090. Given the context, it appears that the legislature was attempting to make all forms of drug treatment optional across the board, including in RCW 69.50.410. Nevertheless, this does not mean that the rehabilitative intent of former RCW 69.32.090, a law passed 50 years earlier, should be imputed to the UCSA.

10

*State v. Peterson*, No. 98201-5

When two acts are inconsistent, we will harmonize them if possible. *City of Spokane v. Rothwell*, 166 Wn.2d 872, 877, 215 P.3d 162 (2009) (citing *Anderson v. Dep't of Corr.*, 159 Wn.2d 849, 858-59, 154 P.3d 220 (2007)). We recently concluded in *Cyr* that the UCSA can be harmonized with the sentencing provisions of the SRA. 195 Wn.2d at 505. "RCW 69.50.410 does not set forth an independent sentencing scheme," meaning that the statute criminalizes the sale of drugs for profit while the SRA provides the sentencing range. *Id.* at 507. Consequently, we concluded that RCW 69.50.410 does not "preclude[] the application of other sentencing provisions." *Id.* at 508. The two statutes do not conflict and, instead, work in tandem for drug crimes. As shown by *Cyr*, the SRA provides the *sentence*, RCW 69.50.410 sets forth the substantive crime, and both statutes work together.[5]

RCW 69.50.410 was last modified in 2003, when the legislature reorganized criminal statutes and repealed a number of them. LAWS OF 2003, ch. 53. RCW 69.50.410 was not repealed; instead, the legislature *specified* that violating the statute is a class C felony and that .410 is a separate crime from other sections of the UCSA, including RCW 69.50.401. *Id*. §§ 342, 337. It is true that "the

---

[5] We respectfully disagree with our dissenting colleagues that our reading of the relevant statutes render relevant portions of them superfluous or that there is any ambiguity that would require the use of the rule of lenity. While on their faces, there is some tension between the statutes, when read in its historical context, RCW 69.50.410(3)(a) establishes a mandatory minimum sentence that works in tandem with the sentencing schema established by the SRA. *See Cyr*, 195 Wn.2d at 509.

*State v. Peterson*, No. 98201-5

legislature has not yet amended the statutory language [of RCW 69.50.410] to reflect the determinate sentencing scheme now provided by the SRA." *Cyr*, 195 Wn.2d at 498. But this does not make the statute inoperative. We presume the legislature understands its own enactments and did not intend to impliedly repeal an unmentioned statute when it expressly repealed others. *Amalg.*145 Wn.2d at 552 (citing *Ropo, Inc. v. City of Seattle*, 67 Wn.2d 574, 578, 409 P.2d 148 (1965)). The statute continues to criminalize the sale of drugs for profit, albeit while not providing the sentencing range. This is hardly surprising, as the legislature has set forth sentencing ranges in the SRA. RCW 9.94A.517, .518.

We reaffirm our holding in *Cyr* that the UCSA and the SRA can be harmonized based on the language of the statute and the legislative history that the UCSA was not intended to be rehabilitative. While the language is outdated and it does not fit comfortably along every piece of Title 9 RCW, RCW 69.50.410 continues to do what it was intended to do: punish the sale of drugs. Accordingly, RCW 69.50.410 has not been repealed by implication.[6]

---

[6] Peterson and Amici also argue that RCW 69.50.410 is invalid under the doctrine of desuetude because the statute "is rarely used in practice and has never been used as intended to sentence drug offenders to DSHS treatment facilities." Br. of Amici Curiae at 19. We are not persuaded. While the statute may be infrequently used, it is not obsolete and it is not rehabilitative. *See, e.g.*, *Cyr*, 195 Wn.2d at 496.

12

*State v. Peterson*, No. 98201-5

II.      Equal Protection

The United States Supreme Court has found that the United States Constitution does not prevent legislatures from punishing the same conduct under different statutes that may result in different punishments. *United States v. Batchelder*, 442 U.S. 114, 123-24, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979). The Court explained:

> [T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced.

*Batchelder*, 442 U.S. at 125 (citations omitted).

We recognize that pre-*Batchelder* cases have held that statutes that prescribe different punishments for the same act committed under the same circumstances by persons in like situations violated equal protection, and some of those cases had suggested that article I, section 12 of our state constitution might also be offended.

13

*State v. Peterson*, No. 98201-5

*Olsen v. Delmore*, 48 Wn.2d 545, 550, 295 P.2d 324 (1956).[7]  Based on this,

Peterson argues that RCW 69.50.410 and RCW 69.50.401 violate this

proscription.[8]  But RCW 69.50.410 prohibits the *sale* of controlled substances

while RCW 69.50.401 prohibits the *delivery* of controlled substances.[9]  *Compare*

RCW 69.50.410(1), *with* RCW 69.50.401(1).  For Schedule I drugs, violating

RCW 69.50.410 is a class C felony.  Under RCW 69.50.401, a Schedule I drug

violation may be a class B or class C felony, depending on the drug type.  These

two statutes criminalize different conduct.  Any overlap is simply a consequence of

---

[7] After our decision in *Olsen*, several cases further developed the contours of when equal protection is violated under the United States and Washington's constitutions.  One such case was *State v. Boggs*, 57 Wn.2d 484, 358 P.2d 124 (1961).  Boggs was sentenced to life imprisonment for a first offense of unlawful drug possession under RCW 69.33.230, part of the now repealed Uniform Narcotic Drug Act.  *Id.* at 485.  Boggs argued that the possession statute required the State to prove his "intent to possess a narcotic drug," but this court disagreed, determining that the legislature intended to punish mere possession without "'intent or guilty knowledge.'"  *Id.* (quoting *State v. Henker*, 50 Wn.2d 809, 812, 314 P.2d 645 (1957)).  This holding has been effectively overruled by *Blake*, 197 Wn.2d at 183.

[8] We have previously recognized that this holding was overruled in part by *Batchelder*, 442 U.S. 114, but only as to the analysis of the Fourteenth Amendment to the United States Constitution.  *City of Kennewick v. Fountain*, 116 Wn.2d 189, 192-93, 802 P.2d 1371 (1991) (discussing *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970) (plurality opinion), which reaffirmed the holding in *Olsen*).  We have not had much occasion to revisit whether our pre-*Batchelder* equal protection analysis survives, perhaps because the rule of statutory construction provides that when "'a special statute punishes the same conduct [that] is punished under a general statute, the special statute applies.'"  *State v. Numrich*, 197 Wn.2d 1, 13, 480 P.3d 376 (2021) (alteration in original) (internal quotation marks omitted) (quoting *State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984)). This rule itself appears to have originated in equal protection jurisprudence.  *See State v. Collins*, 55 Wn.2d 469, 470, 348 P.2d 214 (1960) (impliedly overruled by *Batchelder*, 442 U.S. at 123-24).

[9] More specifically, it is unlawful "to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(1).

14

legislatures' concerns that earlier statutes allowed some of those involved in criminal drug transactions to escape prosecution.

Prior to the UCSA, "one who acted solely as a drug buyer's agent was exempt from prosecution for being an accomplice to the *sale* of dangerous drugs." *State v. Ramirez*, 62 Wn. App. 301, 307, 814 P.2d 227 (1991) (citing *State v. Walker*, 82 Wn.2d 851, 857, 514 P.2d 919 (1973)). Before 1971, the former drug statute prohibited only the sale of drugs. *Id.* This "buyer's agent exemption" or "procuring agent defense" as a defense to selling drugs was no longer available under the UCSA, due to the use of the term "delivery." *Id.* at 308. "By its use of the term 'deliver', the [UCSA] changed [liability] so as to criminalize *participation* in the transfer of unlawful drugs." *Id.* (discussing *State v. Hecht*, 116 Wis. 2d 605, 612-17, 342 N.W.2d 721 (1984)); *see also State v. Grace*, 61 Wn. App. 787, 791, 812 P.2d 865 (1991) (recognizing that the procuring agent defense has not survived the adoption of the UCSA).

But, again, RCW 69.50.410 was passed two years after RCW 69.50.401. *Compare* LAWS OF 1973, 2d Ex. Sess., ch. 2, § 2, *with* LAWS OF 1971, 1st Ex. Sess., ch. 308. The legislative history and subsequent legislative action show that the legislature clearly intended for RCW 69.50.410 and .401 to be separate and distinct statutes. RCW 69.50.410 was intended to "get at the heroin pusher, the hard drug pusher." Hr'g on H.B. 323 Before the S., 43d Leg., 1st Ex. Sess. (Wash. April 14,

15

*State v. Peterson*, No. 98201-5

1973), *audio recording by* Office of the Secretary of Senate, Washington State Archives, http://digitalarchives.wa.gov at 1 hr., 12 min., 0 sec. to 1 hr., 12 min., 5 sec. RCW 69.50.410 imposed mandatory minimum sentences that did not exist in .401 and were rare during that time of indeterminate sentencing. *See* Kitto, Jr., *supra*, at 499 n.27. The legislature continued to affirm its desire to penalize "delivery" and "sale" of controlled substances differently over the years by creating different sentencing ranges in the SRA, classifying the two crimes as different types of felonies, and even amending the UCSA to clarify that these statutes are distinct. *See* LAWS OF 2002, ch. 290 (treating RCW 69.50.410 and .401 differently in the SRA sentencing grid); LAWS OF 2003, ch. 53, §§ 331, 342 (amending RCW 60.50.401 to be a class B or class C felony depending on the severity and RCW 60.50.410 to always be a class C felony), §§ 337, 342 (amending the UCSA to reaffirm that .401 and other sections of the UCSA do not apply to "offenses defined and punishable" under RCW 69.50.410). These two statutes let the State charge lower-level drug dealers or individuals involved in drug transactions (who could no longer use the procuring agent defense) as well as the elusive "hard drug pusher," who supposedly deserved longer mandatory sentences.

It is true that selling a controlled substance for profit, criminalized in RCW 69.50.410, is encapsulated within RCW 69.50.401. *See McGinley*, 18 Wn. App. at

868 (stating that "delivery is a broader category than sale" such that the sale of a controlled substance "is naturally subject to RCW 69.50.401"). But this is not unusual in our criminal laws. While these two statutes do overlap, their elements are different. RCW 69.50.410 requires prosecutors to prove that an individual sold, for profit, a Schedule I controlled substance (with the exception of marijuana). By comparison, RCW 69.50.401 requires a prosecutor to prove that a person delivered a controlled substance, and the State need not show that a controlled substance was sold for profit.[10]

When viewed in a historical context, it is clear that these two statutes do not prescribe "different punishments or different degrees of punishment for the same act committed under the same circumstances by persons in like situations." *Olsen*, 48 Wn.2d at 550. While they overlap, RCW 69.50.410 and .401 do not criminalize the same conduct, and these statutes do not give prosecutors unfettered discretion. Instead, prosecutors are bound by the different elements. These two statutes are reasonable exercises of the legislature's authority and do not impose arbitrary differences in drug crimes.

---

[10] For example, an individual who sells drugs and organizes the sale could be charged under RCW 69.50.410, whereas another person who drives a truck and leaves it in a location knowing there are drugs inside could be charged only under RCW 69.50.401. The delivery driver is arguably less culpable and, accordingly, would face a lower penalty under the two statutes.

*State v. Peterson*, No. 98201-5

RCW 69.50.401 punishes a broad group of people involved in dealing drugs, even those with minimal roles, while RCW 69.50.410 imposes stricter punishments for the principal dealer who actually sells the drug for profit. It may be better policy for our complex drug sentencing laws to be less punitive, but we are required to uphold statutes unless they are invalid or unconstitutional.[11] RCW 69.50.410 is neither. Thus, we respectfully disagree with the dissent that this case is a good vehicle to examine whether state constitutional equal protection principles require a different result than the United States Supreme Court came to in *Batchelder*.

---

[11] We recognize the disproportional harm enforcement of the UCSA has imposed on different communities in our state. *See* Michael D. Blanchard & Gabriel J. Chin, *Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual I[]dentification of Indescript White Powder in Narcotics Prosecutions*, 47 AM. U. L. REV. 557, 600 (1998); Research Working Grp. of Task Force on Race & Criminal Justice Sys., *Preliminary Report on Race and Washington's Criminal Justice System*, 35 SEATTLE U.L. REV. 623 (2012). We do not mean to minimize that harm, but the question before us is whether the statute is constitutional and valid. Similarly, we understand the dissent's concern about the enormous amount of charging discretion vested in the executive branch. But the United States Supreme Court has made clear that discretion does not violate the federal constitution unless it is based on impermissible standards, and this case does not give us an appropriate vehicle to consider whether a different result is mandated under our own constitution. *See Batchelder*, 442 U.S. at 125.

*State v. Peterson*, No. 98201-5

CONCLUSION

We disagree with Peterson that RCW 69.50.410 is invalid and

unconstitutional.  Accordingly, we reverse the Court of Appeals and remand for

further proceedings consistent with this opinion.[12]

González, C.J.

González, C.J.

WE CONCUR:

Johnson, J.

Gordon McCloud, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Stephens, J.

---

[12] As we uphold RCW 69.50.410, we need not reach Peterson's argument that the provision is not severable from the UCSA, which renders the entire act invalid.  In addition, Peterson argues that she is not subject to the doubling provision in RCW 69.50.408.  This issue is not properly before us as it was not raised in the State's petition for review or in Peterson's answer.  RAP 13.7.  However, we recently opined on RCW 69.50.408 in *Cyr*, providing additional guidance on when this doubling provision applies.  195 Wn.2d at 504-05.  We note that Peterson's previous convictions under the UCSA appear to have been for simple possession of a controlled substance, a statute we recently held was unconstitutional.  *Blake*, 197 Wn.2d at 183.  The UCSA doubling provision cannot be based on unconstitutional convictions, nor can an offender score under the SRA.  These issues must be addressed on remand.  *Cyr*, 195 Wn.2d at 511 (citing RCW 9.94A.530(2)).

19

*State v. Peterson (Jerry Lynn)*

No. 98201-5

MADSEN, J. (dissenting)—In 2003, Washington lawmakers reaffirmed that RCW 69.50.410 of the Uniform Controlled Substances Act (UCSA), ch. 69.50 RCW, both defines *and* punishes the sale of heroin. LAWS OF 2003, ch. 53, § 337. Jerry Lynn Peterson was convicted pursuant to RCW 69.50.410(3)(a), therefore she is subject to the penalties contained in that provision: she "shall receive a mandatory sentence of two years."

The majority, however, applies our decision in *State v. Cyr*[1] and supplants this mandatory punishment with a sentence under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. The result of the majority's approach is a conflict between the UCSA and SRA. A defendant charged and convicted pursuant to RCW 69.50.410 will never receive the penalty provided by that statute because it is outside any SRA standard range sentence. RCW 69.50.410(3)(a); RCW 9.94A.517(1) tbl.3. Under the majority's reading of the statutes, the two penalty provisions irreconcilably conflict and create an ambiguity—which *Cyr* does not require and can be resolved only by applying the rule of

---

[1] 195 Wn.2d 492, 461 P.3d 360 (2020).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98201-5
Madsen, J., dissenting

lenity. Applying the rule of lenity, as we must given the majority's analysis, means that Peterson should receive the two-year sentence prescribed by the UCSA, rather than the standard SRA range of 68+ to 100 months.

This resolution is all the more necessary in light of the equal protection implications created by the majority when it refuses to apply the penalty provision of RCW 69.50.410(3)(a). *See* WASH. CONST. art. I, § 12. RCW 69.50.410 criminalizes the sale of heroin for profit and is classified as a level III offense; whereas RCW 69.50.401 criminalizes the delivery of controlled substances and is a level II offense. RCW 9.94A.518. With the penalty provision of RCW 69.50.410(3)(a) rendered superfluous under the majority's decision, RCW 69.50.410 exists only as a mechanism to punish similarly situated individuals more severely in violation of article I, section 12. However, under a correct reading of the UCSA and the SRA—applying the penalty section of RCW 69.50.410—I do not need to reach the constitutional issue. Nevertheless, because the majority does reach the issue, I also write to disagree with its constitutional analysis. I respectfully dissent.

ANALYSIS

Determining whether the UCSA or the SRA applies to Peterson's sentence implicates statutory and constitutional inquiries, both of which are reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). The object of statutory construction is to determine legislative intent. *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98201-5
Madsen, J., dissenting

(2005). We discern meaning of statutes from the ordinary meaning of the language, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

Statutes "'must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "The construction of two statutes shall be made with the assumption that the Legislature does not intend to create an inconsistency. Statutes are to be read together, whenever possible, to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" *State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000) (alteration in original) (citation and internal quotation marks omitted) (quoting *Employco Pers. Servs., Inc. v. City of Seattle*, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)). If a provision is still subject to more than one reasonable interpretation, it is ambiguous. *In re Pers. Restraint of Cruz*, 157 Wn.2d 83, 88, 134 P.3d 1166 (2006) (citing *Jacobs*, 154 Wn.2d at 600-01). If a statute is ambiguous, the rule of lenity applies and requires courts to interpret the statute in favor of the defendant unless legislative intent exists to the contrary. *Id.* (quoting *Jacobs*, 154 Wn.2d at 601).

Statutes are presumed constitutional. *Pierce County v. State*, 150 Wn.2d 422, 430, 78 P.3d 640 (2003). The party seeking to overcome that presumption bears the heavy burden of establishing unconstitutionality. *Id.*; *City of Spokane v. Douglass*, 115 Wn.2d

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

171, 177, 795 P.2d 693 (1990). "We will avoid deciding constitutional questions where a case may be fairly resolved on other grounds." *Cmty. Telecable of Seattle, Inc. v. City of Seattle*, 164 Wn.2d 35, 41, 186 P.3d 1032 (2008).

Peterson and amici curiae assume that *Cyr* forecloses a statutory resolution and offer two alternative arguments for why RCW 69.50.410 is invalid. First, the statute has been repealed by implication and, second, it violates article I, section 12 of the Washington State Constitution.

1.  Repeal by Implication

Turning to Peterson's first contention, the majority concludes repeal by implication has not occurred because RCW 69.50.410 was intended to punish rather than rehabilitate offenders. Majority at 5. While the majority offers a persuasive resolution of this issue, in so doing, it runs headlong into our rule against interpreting a statute in a way that renders any portion of it meaningless. *See G-P Gypsum Corp.*, 169 Wn.2d at 309.

Under the majority's view, the UCSA criminalizes conduct that the SRA punishes separately. Majority at 11. RCW 69.50.410(3)(a) specifies that those convicted of selling heroin for profit for the first time "shall receive a mandatory sentence of two years." The most recent amendment to RCW 69.50.410 occurred in 2003. The amendment clarified that among other things, certain UCSA provisions "shall not apply to offenses defined and *punishable* under the provisions of RCW 69.50.410." LAWS OF 2003, ch. 53, § 337 (emphasis added). The last word from Washington lawmakers was

4

No. 98201-5
Madsen, J., dissenting

that RCW 69.50.410 defined and punished violations.  The majority notes the 2003

amendment, *but not its reiteration of RCW 69.50.410's penalties*.  *See* majority at 11.

In light of this plain legislative intent to punish the sale of heroin with specific

penalties provided by the UCSA, Peterson is subject to a two-year mandatory sentence.

RCW 69.50.410(3)(a).

As a result of the majority's interpretation, the SRA rather than the UCSA applies.

*See* majority at 11-12.  The SRA imposes standard range sentences calculated by offender

score and seriousness level of the offense:

| Seriousness Level | Offender Score 0 to 2 | Offender Score 3 to 5 | Offender Score 6 to 9 or more |
|---|---|---|---|
| III | 51 to 68 months | 68+ to 100 months | 100+ to 120 months |
| II | 12+ to 20 months | 20+ to 60 months | 60+ to 120 months |
| I | 0 to 6 months | 6+ to 18 months | 12+ to 24 months |

RCW 9.94A.517(1) tbl.3.  Here, Peterson agreed to an offender score of 4 and the sale of

heroin for profit is a level III offense.  RCW 9.94A.518.

Thus, according to the majority, RCW 69.50.410 criminalizes Peterson's act of

selling heroin and RCW 9.94A.517(1) subjects her to a sentence of 68+ to 100 months.

*See* majority at 11-12.  But neither Peterson nor any other defendant convicted pursuant

to RCW 69.50.410(3)(a) will receive that provision's "mandatory" 2-year sentence

because 24 months is outside all standard SRA ranges for level III crimes.[2]  This result

conflicts with the plain language of the 2003 amendment, which recognizes that RCW

---

[2] While a sentencing court could depart from the standard range and impose an exceptional two-year sentence, no party has offered such an interpretation.  *See* RCW 9.94A.535.  Moreover, such an exceptional sentence is not an issue in this case.

5

No. 98201-5
Madsen, J., dissenting

69.50.410 defines *and* punishes violations. The majority's decision renders subsection (3)(a) meaningless.

To complicate matters, the majority also reaffirms this court's holding in *Cyr*. Majority at 11. But *Cyr* is distinguishable, and no reaffirmation is needed. That case concerned the UCSA's doubling provision, not the base penalty. *Cyr*, 195 Wn.2d at 497-98, 501 (citing RCW 69.50.408). The defendant in that case pleaded guilty to three counts of selling heroin for profit in violation of RCW 69.50.410(1) and would have received a standard range sentence of 68+ to 100 months. *Id*. at 496. Under RCW 69.50.410(2)(a), the defendant asked for a sentence of no more than 60 months, while the State pointed to RCW 69.50.408(1) to double the 60-month sentence to 120 months. *Id*. The trial court ruled that the UCSA doubled the statutory maximum and applied the rule of lenity to impose no more than 60 months as specified in RCW 69.50.410(2)(a). *Id.* at 497.

On appeal, this court explained that the statutory maximum sentence was 60 months, and under the SRA, the sentence exceeded the standard range to make it the presumptive sentence. *Id.* at 501 (citing RCW 9.94A.599). However, because RCW 69.50.408's doubling provision applies to statutory maximums, the 60-month maximum sentence doubled to 120 months (provided the defendant had a qualifying prior conviction) and was subject to the SRA range of 68+ to 100 months. *Id*. at 501-05. Because the record was unclear whether a prior qualifying conviction existed, we remanded the case to the trial court to make this determination. *Id*. at 510-12.

6

No. 98201-5
Madsen, J., dissenting

*Cyr* also addressed the rule of lenity. In response to the petitioner's argument, *Cyr*

disagreed that RCW 69.50.408's doubling provision could not apply because RCW

69.50.410 constituted a separate sentencing scheme. *Id*. at 507. This court reasoned that

multiple sentencing statutes do apply to RCW 69.50.410, such as the SRA's drug

sentencing grid, therefore it was not an independent scheme that precluded application of

other provisions. *Id*. at 507-08.[3] Accordingly, *Cyr* stated that no party identified a

statutory conflict or offered a reasonable alternative to trigger the rule of lenity. *Id*. at

505.

The present case, by contrast, does identify a conflict. Under the majority's

approach, RCW 69.50.410(3)(a)'s 2-year (24-month) mandatory sentence will *never*

apply to defendants regardless of their offender scores because the SRA standard range

begins at 51 months. This directly conflicts with the legislative intent expressed in

section 337 of the 2003 amendment to RCW 69.50.410, recognizing that it defines and

punishes offenses. This conflict was not raised or considered in *Cyr*, thus *Cyr* does *not*

resolve Peterson's case.

---

[3] The majority reasons that under *Cyr*, "'RCW 69.50.410 does not set forth an independent
sentencing scheme,' meaning that the statute criminalizes the sale of drugs for profit while the
SRA provides the sentencing range." Majority at 11 (quoting 195 Wn.2d at 507). *Cyr*, however,
expressed a more limited holding. It stated that when read in context, RCW 69.50.410 cannot be
interpreted "as creating an independent sentencing scheme *that precludes the application of
other sentencing provisions*." 195 Wn.2d at 508 (emphasis added). This statement responded to
a party's argument regarding application of the rule of lenity and does not necessarily support the
conclusion that RCW 69.50.410 only criminalizes the sale of drugs while the SRA provides the
sentence.

7

No. 98201-5
Madsen, J., dissenting

Our rules of statutory interpretation direct us to harmonize statutes where possible and construe them so that no portion is rendered meaningless. *Peninsula Neigh. Ass'n*, 142 Wn.2d at 342; *G-P Gypsum Corp.*, 169 Wn.2d at 309. Here, harmonizing the UCSA and the SRA is not possible without disregarding RCW 69.50.410(3)(a). *See* majority at 11-12. Instead, assuming the integrity and continued viability of both the UCSA and the SRA, including the differing penalty provisions, these statutes cannot be harmonized under the majority's approach because it creates ambiguity in sentencing. The rule of lenity is designed to address this situation and requires courts to resolve ambiguous criminal statutes in favor of the defendant. *State v. Weatherwax*, 188 Wn.2d 139, 155, 392 P.3d 1054 (2017) (citing *State v. Conover*, 183 Wn.2d 706, 712, 355 P.3d 1093 (2015)). The legislature has been clear as to what conduct is criminalized (selling heroin for profit), and it has reaffirmed the penalty section of the UCSA, but it has not been clear as to which criminal penalties apply to that conduct (the UCSA's two-year mandatory penalty or the SRA standard range). *See id*. Applying the rule of lenity here requires resolving the sentencing ambiguity in Peterson's favor.

Accordingly, I would hold that Peterson is subject to the UCSA's two-year mandatory sentence. RCW 69.50.410(3)(a). Applying the rule of lenity preserves rather than replaces the penalty language of RCW 69.50.410(3)(a) and conforms with our rules of statutory interpretation.[4]

---

[4] Interpreting the proper sentence under the UCSA and the SRA will likely continue to be a less-than-perfect fit until the legislature amends chapter 69.50 RCW to reflect determinate sentencing. *See Cyr*, 195 Wn.2d at 498.

8

No. 98201-5
Madsen, J., dissenting

2. Equal Protection

Peterson and amici next argue that RCW 69.50.410 violates our state

constitution's equal protection clause because the same conduct is criminalized under

RCW 69.50.401, thereby treating similarly situated defendants differently. WASH.

CONST. art. I, § 12.

RCW 69.50.401(1) precludes the delivery of a controlled substance. Delivery

requires a transferrer to relinquish possession to the transferee. *State v. Martinez*, 123

Wn. App. 841, 847, 99 P.3d 418 (2004). While delivery does not expressly require a

sale, the transfer of drugs is hardly a charity; it is almost always exchanged for something

of value. *See* RCW 69.50.410(1)(c). "Selling heroin for profit" under RCW 69.50.410

means passing title and possession of the controlled substance from the seller to the buyer

for a price whether or not the price is paid immediately or in the future. RCW

69.50.410(1)(a). "Price" means anything of value. RCW 69.50.410(1)(c). Making a

profit is not necessary to violate the statute. *State v. Leek*, 26 Wn. App. 651, 655-56, 614

P.2d 209 (1980). Since delivery is a broader category than sale, the sale of heroin is

naturally subject to RCW 69.50.401. *State v. McGinley*, 18 Wn. App. 862, 867-68, 573

P.2d 30 (1977).

The majority notes this statutory overlap, but does not find it offends our

constitution. The majority reasons that the legislature intended RCW 69.50.410 and

9

No. 98201-5
Madsen, J., dissenting

RCW 69.50.401 to be distinct crimes with distinct punishments[5] and that because the

statutes contain different elements, they bind prosecutors rather than provide them with

unfettered discretion. Majority at 13-16. Yet this case illustrates the opposite. Peterson

sold heroin and could have been charged under RCW 69.50.410 or RCW 69.50.401 for

the same criminal conduct. The decision to charge her under RCW 69.50.410 resulted in

a notably harsher punishment.

As noted, RCW 69.50.410 violations are classified as seriousness level III offenses

while RCW 69.50.401 violations carry a seriousness level of II. *See* RCW 9.94A.518.

Charging for delivery of a controlled substance under RCW 69.50.401 with an offender

score of 4 (like Peterson), results in an SRA sentence of 20+ to 60 months; a charge

under RCW 69.50.410 with an offender score of 4 results in 68+ to 100 months. *See*

RCW 9.94A.517(1) tbl.3. The charging decision in Peterson's case illustrates a

prosecutor's unfettered discretion to set the range of punishment by choosing the degree

of a charge. Such limitless discretion is discordant with our state's policy "goals of

treating all men [and women] equally in the guilt determination process while retaining

some flexibility and individualized treatment at the punishment stage." *State v.*

*Blanchey*, 75 Wn.2d 926, 940, 454 P.2d 841 (1969). *Only* where objective standards

---

[5] Ironically, the majority recognizes that RCW 69.50.410 contains an effective penalty provision. Majority at 16 ("The legislature continued to affirm its desire to penalize 'delivery' and 'sale' of controlled substances differently."). The majority does not carry this recognition into its statutory analysis, which supplants RCW 69.50.410(3)(a)'s two-year sentence with the SRA's standard sentencing range.

10

No. 98201-5
Madsen, J., dissenting

govern the decision will a prosecutor be permitted to exercise any discretion at the

charging phase. *City of Seattle v. Hogan*, 53 Wn. App. 387, 391, 766 P.2d 1134 (1989).

That RCW 69.50.410 requires an element almost always present in drug offenses

that can also be charged under RCW 69.50.401 is a weak counterbalance to a

prosecutor's unfettered discretion to charge under RCW 69.50.410 and imposes a

significantly more severe punishment.[6] I am unconvinced that our state constitution

permits such discretion.

Article I, section 12 of the Washington Constitution provides that "[n]o law shall

be passed granting to any citizen, class of citizens, or corporation other than municipal,

privileges or immunities which upon the same terms shall not equally belong to all

citizens, or corporations." This court has construed article I, section 12 as "'substantially

similar'" to the federal equal protection clause for many years. *Schroeder v. Weighall*,

179 Wn.2d 566, 571-72, 316 P.3d 482 (2014) (quoting *Seeley v. State*, 132 Wn.2d 776,

788, 940 P.2d 604 (1997) (collecting cases)). Under both state and federal equal

protection provisions, persons similarly situated with respect to the legitimate purpose of

the law must receive like treatment. *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890

(1992) (citing *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)).

---

[6] According to Peterson, over a span of eight years, more than 1,000 individuals have been convicted of dealing drugs in Washington and most were charged under RCW 69.50.401. Answer to Pet. for Review at 1 (citing the Washington State Caseload Forecast Council for figures). From 2012 to 2017, only 1 individual was charged with violating RCW 69.50.410. *Id.* In 2018, specifically, 3 people were charged with dealing controlled substances under RCW 69.50.410. *Id.* at 2 (noting 2 of the 3 were Johnny Ray Cyr and Jerry Peterson).

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98201-5
Madsen, J., dissenting

We broke from this path to recognize that article I, section 12 differs from the Fourteenth Amendment to the United States Constitution in some instances and requires a different analysis. *Schroeder*, 179 Wn.2d at 572; *see also Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 805-07, 83 P.3d 419 (2004). The independent "privileges" analysis applies only where a law implicates a privilege or immunity as defined in our early cases distinguishing fundamental rights of state citizenship, but this analysis did not replace the "traditional" equal protection guaranties. *See, e.g.*, *Garcia v. Dep't of Soc. & Health Servs.*, 10 Wn. App. 2d 885, 919, 451 P.3d 1107 (2019) (reviewing an equal protection challenge under the Fourteenth Amendment and article I, section 12).

In short, article I, section 12 continues to include both privileges and immunities and equal protection guaranties. *Schroeder*, 179 Wn.2d at 572; *Seeley*, 132 Wn.2d at 788. Courts therefore analyze article I, section 12 differently depending on the claim—whether a law confers a benefit for a privileged few, *Schroeder*, 179 Wn.2d at 572, or treats similarly situated individuals differently. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008). For the latter equal protection analysis, we have generally followed the lead of the United States Supreme Court. But we are not bound to do so when interpreting our own constitution.

The Fourteenth Amendment operates as a floor that article I, section 12 cannot fall beneath. *See State v. Sieyes*, 168 Wn.2d 276, 292, 225 P.3d 995 (2010). The Washington State Constitution can, and often does, raise the ceiling to offer greater or equal

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98201-5
Madsen, J., dissenting

protections. *Id*. This court concluded in *Olsen* and *Zornes* that article I, section 12 *and* the Fourteenth Amendment are violated when one or more operative statutes prescribing different punishments for the same act committed under like circumstances by individuals in like situations. *Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956); *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970) (plurality opinion). Such statutes allow prosecutors unfettered discretion to charge violations under different statutes and subject defendants to different punishments. *Olsen*, 48 Wn.2d at 550-51; *Zornes*, 78 Wn.2d at 25.

In *Olsen*, this court struck down a statute that allowed prosecutors the discretion to charge offenders with either a misdemeanor or a felony. 48 Wn.2d at 546-50. In *Zornes*, the court reviewed two statutes prohibiting the same conduct—possession of cannabis— that allowed prosecutors to charge the conduct as a misdemeanor or a felony. 78 Wn.2d at 25. Relying on *Olsen*, the *Zornes* court held that there was no basis in the statutes for distinguishing between the persons who could be charged for a misdemeanor or a felony, therefore violating equal protection. *Id.* A prosecutor may exercise discretion in deciding whether to prosecute an offender or not and whether to proceed under one statute or another provided the facts to be proved are not the same. *Id*. at 22 (quoting *State v. Reid*, 66 Wn.2d 243, 247, 401 P.2d 988 (1965)).

*United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979), called *Olsen* and *Zornes* into question. This court noted that *Batchelder* "found no constitutional infirmities with two federal statutes that, while independent of each

13

No. 98201-5
Madsen, J., dissenting

other and not coextensive, punish the same conduct differently." *State v. Sherman*, 98 Wn.2d 53, 61 n.6, 653 P.2d 612 (1982); *see also Batchelder*, 442 U.S. at 121, 123. The *Batchelder* Court reasoned that a prosecutor's discretion to choose between similar statutes was not unfettered. 442 U.S. at 124-25. Selecting the enforcement provision for criminal laws is subject to constitutional constraints, and the discretion "to proceed under [identical statutes prescribing different penalties] does not empower the Government to predetermine ultimate criminal sanctions." *Id*. at 125. Further, *Batchelder* identified no "appreciable difference" between the decision to charge one of two statutes with different elements and choosing one of two statutes with identical elements. *Id*. The penalties available may influence the prosecutor's decision, but that fact "standing alone" does not violate equal protection. *Id*.

We observed that *Batchelder* overruled *Zornes* as to the Fourteenth Amendment, but did not resolve whether *Zornes* or *Olsen* remain good law under article I, section 12. *City of Kennewick v. Fountain*, 116 Wn.2d 189, 193, 802 P.2d 1371 (1991); *State v. Kirwin*, 165 Wn.2d 818, 831, 203 P.3d 1044 (2009) (Madsen, J., concurring). The majority answers this open question in a footnote, concluding that RCW 69.50.410 and RCW 69.50.401 do not offend the constitution even if article I, section 12 was more protective than the Fourteenth Amendment. Majority at 14 n.8. In my view, this constitutional analysis requires a more searching analysis.

Unlike *Batchelder*, Washington courts have consistently held equal protection of the law requires statutory classifications of crimes be based on real, factual differences

14

No. 98201-5
Madsen, J., dissenting

and reasonably related to the general purposes of criminal legislation. *See State v. Mason*, 34 Wn. App. 514, 519-20, 663 P.2d 137 (1983) (quoting *People v. Marcy*, 628 P.2d 69, 74 (Colo. 1981)); *State v. Persinger*, 62 Wn.2d 362, 368, 382 P.2d 497 (1963) ("It is only necessary that the [legislative] classification be reasonable, not arbitrary, and rest upon some difference having a fair and substantial relation to the object of the legislation."). Such protection is absent when statutes allow "different punishments or different degrees of punishment for the same act committed under the same circumstances by persons in like situations." *Olsen*, 48 Wn.2d at 550; *see also Zornes*, 78 Wn.2d at 24-25.

This court has also noted that allowing a prosecutor unfettered discretion to set the range of punishment by choosing the degree of a charge conflicts with the goal to treat all individuals "equally in the guilt determination process while retaining some flexibility and individualized treatment at the punishment stage." *Blanchey*, 75 Wn.2d at 940. A prosecutor is permitted to exercise any discretion at the charging phase when objective standards alone govern that charging decision. *Hogan*, 53 Wn. App. at 391. The rationale and result of our case law depart from *Batchelder*, and I see no reason to adopt a contrary holding in this case.[7]

---

[7] Other jurisdictions have similarly declined to follow *Batchelder* on state constitutional grounds. *See, e.g.*, *Marcy*, 628 P.2d at 74-75; *State v. Sasai*, 143 Haw. 285, 295 n.12, 429 P.3d 1214 (2018); *State v. Thompson*, 287 Kan. 238, 255-58, 200 P.3d 22 (2008); 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 13.7(a) (4th ed. 2015) (noting that "there is no reason why" courts must retreat from positions that disagree with *Batchelder*).

15

No. 98201-5
Madsen, J., dissenting

Moreover, under the majority's statutory interpretation, RCW 69.50.410 no longer contains an effective penalty provision to distinguish it from RCW 69.50.401. Consequently, RCW 69.50.410 exists as an arbitrary mechanism to punish some offenders more severely than others—contrary to the equal protection of law. *Olsen*, 48 Wn.2d at 550; *Zornes*, 78 Wn.2d at 24-25. While I believe that RCW 69.50.410 violates article I, section 12 under the majority's resolution, such a holding is unnecessary if the court applies our usual methods of statutory interpretation and resolves this case on the plain language of RCW 69.50.410(3)(a) or on the rule of lenity.

For these reasons, I respectfully dissent.

_____
Madsen, J.

_____
Whitener, J.

16